## Hamm v. Clauss

*G. P. Bolez, Jr.,* for plaintiff.
*E. Kline, Jr.,* for defendant.

DIEFENDERFER, J., August 4, 1952. — Defendant brought an action to quiet title. An order was entered wherein judgment was given to quiet title, reserving action to present plaintiff, 30 days from the date of order to bring action of ejectment. Subsequently, plaintiff brought an action of ejectment pursuant to this order. After trial, the court directed a verdict in favor of defendant after which proper motions were filed by plaintiff for judgment non obstante veredicto and new trial, which judgments are presently before this court.

The following facts are found by this court:

1. On October 10, 1927, Irwin R. Hamm obtained title to vacant lots Nos. 1416, 1418 and 1420 Muhlenberg Street, South Whitehall Township, Lehigh Coun-

ty, Pa., by deed of Elmira L. Henninger, widow, et al., recorded in the Recorder of Deed's Office of Lehigh County in Deed Book, vol. 465, page 111.

2. On November 8, 1937, Irwin R. Hamm died testate, leaving a will probated in the Register of Wills Office of Lehigh County on November 22, 1937, wherein he devised his entire estate unto Marvin G. Hamm, plaintiff, but should he die without marrying testator devised his entire estate to the Heidelberg Church.

3. Marvin G. Hamm married prior to the death of Irwin R. Hamm.

4. Lots Nos. 1416, 1418 and 1420 Muhlenberg Street were assessed for tax purposes in the name of Irwin R. Hamm from 1928 to and including 1947.

5. The lots were assessed in the name of Irwin Hamm Estate for the years 1948, 1949 and 1950.

6. Marvin G. Hamm paid the taxes assessed against the lots for the years 1938 to 1947, inclusive.

7. The taxes assessed against the lots were not paid for the year 1948 and prior to the first Monday of May 1949 the tax collector of South Whitehall Township made return to the Lehigh County Tax Claim Bureau that the taxes were unpaid.

8. On June 28, 1949, notice of the filing of the return and the entry of the claim of the tax claim bureau was forwarded by registered mail to Irwin R. Hamm, at Germansville, Pa. The tax claim bureau received a return card for this notice, which card was signed by Ellen Rehrig on July 1, 1949.

9. The notice contained all the information shown on the claim, the amount of taxes due and contained a statement that if the taxes were not paid by December 31, 1949, the claim would become absolute, and that the redemption period would expire on August 1, 1950.

10. After the tax claim bureau received the return card for the notice dated June 28, 1949, the director of the bureau endorsed a statement upon the claim that due notice was given by registered mail.

11. On June 1, 1950, notice was forwarded to Irwin R. Hamm at Germansville, Pa., by registered mail notifying him that the lots would be sold at an upset price sale to be held on August 14, 1950. This notice was returned to the tax claim bureau unclaimed.

12. On June 24, 1950, the lots were posted with a notice that they would be exposed to upset price sale on August 14, 1950.

13. On June 23, 30, and July 1, 1950, notice of the sale of the lots on August 14, 1950, was advertised in the Allentown Morning Call and Evening Chronicle, newspapers of general circulation published within Lehigh County. On June 30, 1950, notice of sale was published in the Lehigh Law Journal, a law journal published within the county.

14. On August 14, 1950, the upset price sale was held and the lots were withdrawn for lack of bids.

15. The upset price sale was confirmed by this court in proceedings indexed in the prothonotary's office of this county to September term, 1950, no. 215.

16. On September 19, 1950, an offer was received from defendant to purchase these lots at private sale for the sum of $65.20, the amount of the upset price.

17. On September 19, 1950, the Secretary of South Whitehall Township, the Secretary of South Whitehall Township School Board and Irwin R. Hamm were notified of the offer of William F. Clauss by registered mail.

18. A copy of the registered notice was addressed to Irwin R. Hamm, at Germansville, Pa., and forwarded by registered mail, and the notice was returned to the tax claim bureau on September 21, 1950, unclaimed.

19. No objections having been filed to the private sale, the tax claim bureau conveyed the lots to William F. Clauss by deed dated on October 14, 1950, and recorded in the recorder's office of this county in Deed Book, vol. 747, page 53.

20. On August 21, 1951, William F. Clauss sold the lots to a third party, whose attorney raised the lack of personal service in the tax claim bureau proceedings upon Marvin G. Hamm, as a cloud upon the title.

21. Thereafter, William F. Clauss attempted to secure a quitclaim deed from Marvin G. Hamm for the lots, but was unable to do so.

The question therefore arises: Was notice properly given to the owner by the tax claim bureau?

The sale of the vacant lots by the tax claim bureau was made by virtue of the provisions of the Real Estate Tax Sale Law of July 7, 1947, P. L. 1368, as amended, 72 PS §5860.101, etc. Section 308 (72 PS §5860.308) of the act sets forth the method of giving notice of the filing of the tax collector's return and the entry of the claim. It provides for notice by registered mail addressed to the "owner" at his last known address, and if no address is known or if the notice cannot be delivered by the postal authorities, then notice shall be given by posting.

Section 102 of the act (72 PS §5860.102) describes "owner" as:

"The person in whose name the property is last registered, if registered according to law, and in all other cases means any person in open, peaceable and notorious possession of the property, as apparent owner or owners thereof, or the reputed owner or owners thereof, in the neighborhood of such property."

The definition of "owner" as used in this act was discussed in the case of Ross Appeal, 366 Pa. 100, 76 A. 2d 749 (1950) at page 104 the court said:

"The learned counsel correctly argued and the learned court below correctly held that the 'registered' owner is not the same as an owner whose deed is recorded. Greene County is one of the counties to which existing deed registry laws do not apply, so that the first clause of the section quoted could have no application to property in that County. However, the legislature evidently having in mind that not all the counties were subject to the deed registry laws apparently meant to provide for such counties in the last part of the definition by the language *'and in all other cases means any person in open, peaceable and notorious possession'*, etc., thus following the time honored precedents of bringing notice home to an owner of real estate by serving the terre tenant, or occupant or by posting the premises, than which there probably is no surer way of bringing home notice to an owner of seated lands."

Applying the above to the facts in this case we find that the deed registry laws do not apply to this county, that this was a vacant lot and that plaintiff was not the reputed owner of the property in the neighborhood thereof. Further, we find that only the last part of the definition applies to this case. Lehigh County has no registry laws, so the "registered owner" does not apply. This property was vacant ground, so "open, peaceful and notorious possession" is likewise of no assistance. The same applies to "apparent owners". Thus, the only part of the definition that can apply is "the reputed owner or owners thereof, in the neighborhood of such property".

Who was the "reputed owner" of these lots in the neighborhood of the lots? Not plaintiff, for he admitted on the stand that he didn't even know where the lots were. No, the reputed owner was still plaintiff's father, Irwin R. Hamm. There is no proof that the death of Irwin R. Hamm was common knowledge in

the neighborhood of the lots, nor were people aware of the probate of his will. Plaintiff argues that the director of the tax claim bureau should have done the following to ascertain the real owner:

1. Compare the name of the owner as returned by the tax claim bureau with the name of the owner appearing in the assessment dockets.

2. Having discovered that the property was assessed in the name of the Irwin Hamm Estate, search the register of wills records to discover whether a will had been probated or letters of administration issued.

3. If no record of the estate appeared in the register of wills office, make a general investigation as to the owner.

If it was necessary for the tax claim bureau to take such steps in every claim, the work of that office would increase in wild proportions, and the act would be unworkable.

The first notice which was mailed to Irwin Hamm was not returned. True, the receipt card was not signed by the addressee, but it is common practice for someone at the address to sign for the addressee. The return of this receipt was reason for the tax claim bureau to believe that Irwin Hamm was alive and suggested no further investigation. The fact that the other notices were returned undelivered did not necessarily suggest the death of Hamm and put the bureau on notice. Thereafter, the property was posted and advertised according to law.

The case of Ross Appeal, 366 Pa. 100, supra, is quoted by plaintiff. The court says that it is not the purpose of the act to strip a taxpayer of his property, but rather to insure collection of taxes and criticizes the tax authorities for lack of common sense. The facts of that case are distinguishable from the one before the court. In Ross Appeal case the owner pur-

chased the property in 1946. She knew that the taxes were paid for the years 1945 and 1946 and assumed that prior taxes were paid. She paid the 1947, 1948 and 1949 taxes. The property was assessed in her name for the years 1947, 1948 and 1949. The 1943 and 1944 taxes were unpaid and a claim filed. Notice was given by registered mail to the prior owner and the postal receipts were returned to the bureau. The property was sold for $50. It was worth $3,500. It contained a house occupied by the owner. The sale was confirmed 49 days after the return was filed, instead of allowing the 60 days to intervene between the return and the confirmation, as required by the act. The court set the sale aside in spite of the provisions of the act (section 602) that "no sale shall be defeated and no title to property sold shall be invalidated because of proof that mail notice as herein required was not received by the owner": 72 PS §5860.602.

The court, referring to Hess v. Westerwick, 366 Pa. 90, stated that the legislature could not in one breath require notice and in the next foreclose the right of the property owner, even though the notice required by the act was never given, and concluded that the bill of rights was violated. It based its conclusions on the fact that no notice was given to the owner.

Here the facts are different. Here plaintiff had paid the taxes from 1938 to 1947 inclusive, a period of 10 years. During this period the property was assessed in the name of Irwin Hamm and later in the name of Irwin Hamm Estate. Plaintiff did not have the assessment corrected. Plaintiff did not pay the taxes for the years 1948, 1949 and 1950. He knew the taxes were unpaid. He excuses this by stating that he did not receive tax bills. He says he didn't know who the new tax collector was. Plaintiff argues that a reasonable investigation on the part of the tax

claim bureau would have revealed the name of plaintiff as the owner. By the same token, a reasonable investigation (merely a call to the courthouse or any resident of the township) would have disclosed the identity of the tax collector. In Ross Appeal, supra, the court also said, at page 107:

"Tax Acts were rather meant to protect the local government against wilful, persistent, long standing delinquents for whom we hold no brief, and to whom the appellate court decisions have consistently given short shrift."

Comparing the cases further we find that in Ross Appeal case, the property was never advertised for sale and was never posted. Plaintiff says he never saw the advertisements of the sale, nor saw the sale handbill posted on the property because he didn't know where the property was. This property was included in the first upset price sale held in Lehigh County. The sale was given great publicity in the local newspapers. Plaintiff had knowledge of these sales. He knew his taxes were unpaid but never inquired as to the status of his lots nor examined them to see if they were posted. These facts distinguish this case from the Ross Appeal case, and it does not set a precedent for this case. The fact that there was no posting, and no advertising of the property alone is sufficient to distinguish the two cases.

We have referred to the case of Hess v. Westerwick, 366 Pa. 90, 76 A. 2d 745 (1950). In that case the facts were like those of the Ross Appeal case, supra: (1) The property was not posted, (2) the current taxes were paid, and (3) the property was seated. This case involved a treasurer's sale and not a tax claim bureau sale. It is distinguishable from our case for the same reasons we set forth above.

We have seen from above that notice by registered mail to one other than the owner is insufficient for the

purposes of the Tax Sales Act. Is notice by posting sufficient? Section 308 of the act provides for notice by registered mail to the owner at his last known address. Certainly this means the address last known to the tax claim bureau. If no post office address is known or if the notice is not delivered by the post office, then notice shall be given by posting. Owner in this case means the reputed owner in the neighborhood of the property. Notice was mailed to him. The first notice was accepted by someone unknown to plaintiff (as in Hess v. Westerwick, supra), and second and third notices were returned, but the property was posted. Section 308 (c) of the act provides:

"Notice given in the manner provided in this section shall constitute proper service on the owner. A statement in the claim entered that due notice of the same was given shall be conclusive evidence that notice was given as required by law."

Neither the Ross Appeal case nor Hess v. Westerwick discuss this section of the act, yet the effect of these cases is to destroy this section so far as notice by registered mail not mailed to the owner. The section is still effective as far as notice by posting is concerned and it is good and sufficient notice under this act. In fact both of these cases infer that had the properties been posted, the tax sales would have been valid.

The court therefore concludes as follows:

1. "Owner" as used in the Tax Sales Act as applied to this case means the reputed owner of the property in its neighborhood. That person was Irwin R. Hamm, even though he was deceased.

2. The first notice having been accepted for Irwin Hamm by another person, the tax claim bureau was not put on notice of his death, and no further search for the owner was indicated.

58

3. The posting of the property was sufficient notice to validate the claim, the sale and the conveyance to defendant.

4. Plaintiff, knowing the taxes were unpaid and that tax sales were being held, was obligated to determine whether his property was to be sold.

5. The deed of the tax claim bureau vested a fee simple title in defendant and divested the title of plaintiff.

And now, August 4, 1952, plaintiff's motions for judgment non obstante veredicto and for a new trial are hereby dismissed.