Hess et ux. *v.* Westerwick, Appellant.

Argued October 2, 1950. Before DREW, C. J., STERN, STEARNE, JONES, LADNER and CHIDSEY, JJ.

reargument refused December 7, 1950.

*Wm. Alvah Stewart,* with him *George P. Kiester, Clyde S. Shumaker, Shumaker & Kiester* and *Weller, Wicks & Wallace,* for appellant.

*Elder W. Marshall,* with him *Luther C. Braham, Darrell L. Gregg, Galbreath, Braham & Gregg, Edmund K. Trent* and *Reed, Smith, Shaw & McClay,* for appellees.

OPINION BY MR. JUSTICE LADNER, November 13, 1950:

This is an appeal by Westerwick, the purchaser at a treasurer's tax sale, from the decree of the court below directing appellant to convey to the appellees a deed for the property purchased upon receiving reimbursement of the amount of taxes paid plus 15% and cost of deed.

The matter arose in the court below on a bill in equity filed by the appellees, George A. Hess and Gertrude J. Hess, plaintiffs below, owners at time of tax sale, averring invalidity of the tax deed and praying for the decree made.

The undisputed facts and as found by the court below are: Plaintiffs, by deed dated August 7, 1945, and recorded, purchased a farm of 100 acres in Forward Township, Butler County, on which there was a dwelling house, two tenant houses and a barn, and paid for the same $20,000. Plaintiffs' grantor was Milton E. Rosenberg, who in turn had purchased the same property by deed dated June 7, 1943, and recorded, from Alvin Lichtenstul and Claire Lichtenstul. The property in question had been assessed for tax purposes for 1943 in the name of Alvin Lichtensteel and the unpaid taxes for that year returned to the Commissioners and County Treasurer in that name. The amount of the delinquent taxes returned was $52.10. The taxes for the years of 1944 and 1945 were paid by Rosenberg and taxes for

the years 1946 and 1947 were paid by appellees (Hess).

Plaintiffs executed two mortgages to the Foster Savings and Loan Association, one for $15,000 and the other for $26,500, and made extensive improvements including inter alia, stables for 40 head of horses, artificial lake, modernization and addition to the dwelling house, etc., costing in all $60,000; so that plaintiffs' total investment was $80,000.

On August 12th, 1946 said property was sold by the Treasurer of the County of Butler at Treasurer's tax sale in the advertisement of which the property was described merely as "100 acres of land in Forward Township." It was bid in by the appellant, Emil Westerwick for $60.00 although appellees were occupying the farm at the time of the sale, and had paid their taxes for the year 1946. They were sent no notice either as owners nor as terre tenants. Nor was notice of the sale given to Lichtenstul the owner in whose name the taxes of 1943 were assessed. Notice by registered mail of the proposed sale was sent to Milton E. Rosenberg at an address in Pittsburgh where he had formerly lived and was receipted for by someone he did not know and who never forwarded the notice to him. Rosenberg at that time was neither owner nor terre tenant.

The appellant, Westerwick, in the fall of 1947, visited the property which he had thus purchased at the tax sale for $60.00. He saw houses, stables, one being in course of construction at that time. He saw more than 40 head of horses, cattle, employees and all evidence of a productive farm. The period of the right of redemption had not then expired and the appellant did not disclose to any of the occupants or employees the purpose of his visit but remained silent until after the two year redemption period had expired.

The learned court below refused to hold the tax title invalid but genuinely shocked as we are that an $80,000 property could be sold for a comparatively

trivial sum of $60.00 in this enlightened age, because of a blundering administration of the tax sale laws, sought to give relief to the plaintiffs on the theory that the purchaser had forfeited his right to hold on to the property by his silence as above recounted. The learned court below applied the doctrine of equitable estoppel as laid down in the line of cases which he cited, viz., *Smith v. Rowland*, 243 Pa. 306, 90 A. 183 (1914); *Wahl v. Pittsburgh & Western Ry.*, 158 Pa. 257, 27 A. 965 (1893); *Chapman v. Chapman*, 59 Pa. 214 (1868); *Carr v. Wallace*, 7 Watts 394 (1838); *Kern v. Greensweig*, 125 Pa. Superior Ct. 430, 190 A. 182 (1937). He sought to give relief by directing appellant to convey his title to appellees upon the reimbursement of the sum bid and expenses.

Without intending to limit the scope of the just and beneficent doctrine of equitable estoppel as laid down in those cases, we are not prepared to agree to its application to this case and we find it unnecessary to do so because we are all of one mind that the tax sale here cannot be upheld.

The law governing this sale was the Act of May 29, 1931, P. L. 280, Sec. 7, which, as amended by Section 3 of the Act of June 20, 1939, P. L. 498, 72 P.S. 5971g, reads: "The county treasurer shall advertise the fact of holding such sale, once a week for the three successive weeks prior to the holding of such sale, in at least two newspapers of general circulation in the county in which said seated land is located, if there be two newspapers so published; if there be only one, then in such newspaper so published in the county.

"Such advertisement shall set forth: (a) The purpose of such sale. (b) The time of such sale. (c) The place of such sale. (d) The terms of such sale. (e) A list of the seated lands affected and their location, and the owner or reputed owner of each. (f) Amount of taxes and interest.

"In addition to such advertisement, at least *ten* days before any such sale, written notice thereof shall be served by the county treasurer, by registered mail, upon the *owner* of such land, and if the whereabouts of the owner is unknown, such notice shall be served by registered mail upon the terre tenant, if any: Provided, however, That no such sale shall be prejudiced or defeated and no title to property sold at such sale shall be invalidated by proof that such written notice was not served by the treasurer, or that such notice was not received by the owner or terre tenant as herein provided." (Emphasis supplied)

It is to be noted the first part of this quoted section referring to publication of notice of sale is not expressly made the method of service of notice on the owner for that service is expressly provided for in the paragraph following. The purpose of the publication is to notify the public in general so that the sale may be well attended by bidders, etc. so that nothing which we are about to hold is to be regarded as indicating that in proper circumstances notice or service directed to be made by publication cannot be a valid service. Here, however, other service of notice was provided for, which was not obeyed.

The treasurer did not obey the mandate of the statute in several important particulars among which are (1) The Act required *10 days* notice before the sale. The sale was fixed for August 12, 1946, but the record of the county treasurer shows the notice was not sent until August 8, 1946, *four* days before the sale. (2) The act requires the notice be served upon the *owner of the land.* We need not stop to inquire in this case whether this meant the owner in whose name the delinquent tax was assessed or the actual record owner at the time of the sale, because it was served on neither. Rosenberg, to whom it was sent, was neither the owner at the time the taxes were assessed and returned delinquent, for

that was Lichtenstul. Nor was Rosenberg the owner at the time of sale, that was the appellees. Consequently this requirement was not complied with. (3) Although the amendment of 1939 took out salutory provisions of the Act of 1931 which required posting of the premises and which has happily been restored by the Real Estate Tax Sale Law of 1947, P. L. 1368, Sec. 602, 72 PS 5860.602, the amendment of 1939 still required notice to the terre tenant if the whereabouts of the owner was unknown.Yet notwithstanding the treasurer apparently did not know the whereabouts of either Lichtenstuls or appellees, no notice was sent to the terre tenant. If this simple provision of the Act had been obeyed this case would not have been here.

The learned court below conceded that these indispensable service requirements of the Act were not obeyed, but felt obliged to uphold the sale title because of the proviso to the effect that the sale should not be prejudiced or defeated or title to the property sold, be invalidated by proof that such written notice was not served by the treasurer or that such notice was not received by the owner or terre tenant. We are of the opinion that this clause cannot be given the sweeping effect that its language seems to indicate for that would in effect strike out the very provisions for notice that the prior part of the section ordains.

It is a fundamental provision of both our state and federal constitutions that no person shall be deprived of property except by the law of the land or due process of law. Without due process of law the right of private property cannot be said to exist. As said by Mr. Justice PITNEY in *Ochoa v. Hernandezy Morales*, 230 U. S. 139, 161 (1912), "The principle, known to the common law before Magna Charta, was embodied in that charter (Coke, 2 Inst. 45, 50) and has been recognized since the Revolution as among the safest foundations of our constitutions. Whatever else may be un-

certain about the definition of the term 'due process of law' all authorities agree that it inhibits the taking of one man's property and giving it to another, contrary to settled usages and modes of procedure, and *without notice* or an opportunity for a hearing." And see recent case of *Mullane v. Central Hanover B. & T. Co.,* 339 U. S. 306 (1950), holding that the kind of notice must be such as is reasonable under the circumstances.

In recognition of this right to notice it has been the settled practice in this State extending back for over a century and a half to give the property owner some reasonable notice that his property is to be sold by process of law whether it be by mortgage foreclosure, execution or for tax defaults. Had the legislature provided for no notice at all there is little doubt the Act would have been invalid as offending these fundamental provisions of both state and federal constitutions. Can it then by indirection do what it cannot do directly? Can it direct notice in one breath so to speak and in the next breath practically say it need not be given? To state the proposition is to answer it.

The legislature seems itself to have recognized the absurdity of the proviso, for the Real Estate Tax Sale Law of 1947, P. L. 1368, (which expressly repeals the Act of 1931 and its amendments, in so far as they apply to taxing districts coming within the provisions of and operating under the 1947 Tax Sale Law), modified this proviso so as to read: "No sale shall be defeated and no title to property sold shall be invalidated because of proof that mail notice as herein required was not *received* by the owner." This is not objectionable. Someone must take the risk of mail miscarriage rare as that may be, and that risk may fairly be placed on the delinquent taxpayer who has the duty of protecting his title against such defaults. Moreover the new Act adds a posting provision which in such circumstances is a

reasonable method of apprising the owner of the property.

It may be well to say a word also as to the responsibility of the taxing authorities' duty in the premises. The purpose of tax sales is not to strip the taxpayer of his property but to insure the collection of taxes. When therefore a property is to be sold, reasonable care requires the authorities to give adequate description and a reasonably definite location. Here an improved farm of 100 acres with barn and dwelling and tenant houses was described merely as "100 acres of land in Forward Township," without even the location by adjoinders required by Sec. 1 of the Act of 1931, as amended, supra. Such description and such location is manifestly too indefinite for seated property. See opinion of present Chief Justice in *Hunter v. McKlveen,* 361 Pa. 479, 65 A. 2d 366 (1949).

We are quite aware of the problem of taxing authorities which in recent years had led the legislature to make tax titles more than the mere purchase of a law suit: see excellent review of the early cases and history by Judge ARNOLD in *Beacom v. Robison,* 157 Pa. Superior Ct. 515, 43 A. 2d 640 (1945). Therefore quite properly the legislature has sought to prevent invalidation of sale for mere technical omissions, irregularities or errors. But this very fact places upon the taxing authorities a responsibility to see that the owner of the property is not punished by the taxing authorities' neglect or worse, and deprived of an extremely valuable property because of the carelessness or oversight of a title searcher in failing to discover a comparatively trivial sum of taxes unpaid in one of the previous years. To permit it would be an outstanding reproach of our system of justice. As stated at the argument if someone had merely gone to the available records the change in ownership could have been easily discovered and a mere inspection of the farm would have disclosed the

real owner and would have brought forth payment of the delinquent tax immediately, an assurance warranted by the fact taxes of all subsequent years had been consistently paid.

The learned counsel for appellant cited the case of *Thompson v. Frazier,* 159 Pa. Superior Ct. 395, 48 A. 2d 6 (1946), as to finality of tax sale where decree of confirmation has been entered by the court, but an examination of that case shows the facts therein are wholly different from those of the instant case in that there the owner at the time of the sale was the same owner against whom the taxes were assessed and had due notice of the sale and was at the most complaining of minor irregularities that were not vital. So what the learned Judge (RENO) there said with respect to the invulnerability of the tax title after decree of confirmation based on Section 12 of the Act of 1931, as amended by the Act of 1939, 72 P.S. 5971 1, must be read in conjunction with the early statement in the opinion to the effect that the property owner there had full and timely knowledge of all steps taken prior to the sale and could not have been said to have been misled to his harm. To which may be added in view of the owner's knowledge he was bound to act to protect his rights by timely objections or exceptions *before* confirmation. Where, however, the requisite notice of sale required by that Act has not been given to the owner in accordance with the act and he is without knowledge until after confirmation, the confirmation cannot cure the fundamental omission because of the "due process" clauses of our state and federal constitutions.

See our opinion in *Ross Appeal,* 366 Pa. 100, 76 A. 2d 749.

The decree of the court below is reversed only however for the purpose of entering a new decree for the appellees in accordance with this opinion declaring the tax title to be invalid and directing the appellant to

deliver up for cancellation his deed upon reimbursement of the amount of taxes paid by him plus 15% as required by law (see Act of July 12, 1935, P. L. 661; 72 P.S. 5971o) and any other proper expense. Costs to be paid by appellant.