138

## Pejak v. Baich

[redacted]

*Llewellyn E. Lloyd,* for plaintiff.
*William G. Shahade,* for defendant.

McDONALD, J., March 12, 1958.—Plaintiff commenced an action to quiet title under Pa. R. C. P. 1061, et seq., in which he requested that his title to a lot situate in the twenty-first ward, Johnstown, Cambria County, be declared valid and indefeasible as against any claim of defendant. He acquired title to said lot by deed of Meade J. Ludwig and Lola, his wife, dated August 1, 1949, and recorded in Cambria County on September 20, 1949. The lot was assessed in the name of Meade J. Ludwig until 1952, at which time it was changed to the name of plaintiff. The 1950-51 real estate taxes were returned to the Cambria County treasurer as delinquent. On September 30, 1953, registered mail notice of a treasurer's sale of said lot for the delinquent 1950 taxes was received by Meade J. Ludwig. No notice was sent to plaintiff. On October 7, 1953, the lot was sold at treasurer's sale in the name of "Meade J. Ludwig, as owner or reputed owner," to defendant for the consideration, including interest and costs of sale, of $13.84. Subsequently, a treasurer's

deed was executed and delivered to defendant and recorded after the redemption period had expired. Plaintiff had no knowledge of the sale until sometime in 1957 when he attempted to sell the property. He has paid all taxes subsequent to 1951.

In his answer and new matter, defendant claims the tax sale in the name of Meade J. Ludwig was valid and conveyed the estate or interest of plaintiff in the land.

By stipulation, the parties agreed that notice of the sale was sent to Meade J. Ludwig by registered mail; that the property was assessed in his name until 1952, at which time it was changed to Ignatius Pejak, and that the land was unimproved, there being no terre tenant on it.

Plaintiff moved for judgment on the pleadings, stating as his reason therefor, the tax sale was invalid because the treasurer had failed to send him a notice as required by law.

The question to be resolved is whether a tax sale under the Act of 1931 is invalid, where notice of such sale was not sent to the actual owner of the land, even though notice had been sent to a predecessor in title assessed at the time the taxes became delinquent.

The tax sale proceeding here in issue is governed by the Act of May 29, 1931, P. L. 280, sec. 7, as amended, 72 PS §5971g, which provides that the county treasurer shall advertise the holding of sale for delinquent taxes, setting forth in said advertisement the purpose, time, place, terms, ownership or reputed ownership, and description of the property and the amount of taxes and interest due. Since neither party questions the advertisement, we presume the requirements of the act in this respect were complied with. The act further provides:

"In addition to such advertisement, at least ten days before any such sale, written notice thereof shall be

served by the county treasurer, by registered mail, upon the owner of such land, and if the whereabouts of the owner is unknown, such notice shall be served by registered mail upon the terre tenant, if any: Provided, however, That no such sale shall be prejudiced or defeated and no title to property sold at such sale shall be invalidated by proof that such written notice was not served by the treasurer, or that such notice was not received by the owner or terre tenant as herein provided."

It is this latter section with which we are here concerned. Plaintiff contends the sale was invalid because no notice was sent to him, and defendant contends the act was complied with when notice was sent to the assessed owner at the time the taxes became delinquent.

The wording of the Act of 1931 above quoted is clear and unambiguous. It requires that notice "shall be served by the county treasurer, . . . upon the *owner* of such land, . . ." Since notice is given at the time of sale, the word "owner" could only refer to the one in whom title was vested at that time. Obviously, the purpose of the notice is to afford the owner opportunity to protect his estate or interest in the land proposed to be sold. Notice to one who had no interest to protect at the time of sale would be futile and serve no purpose whatsoever. Thus, we must conclude the word "owner", as used in the above quoted section of the Act of 1931, is restricted to one having a present estate or interest in the property proposed to be sold and does not mean the assessed owner at the time the taxes became delinquent, even though he be a predecessor in title. It is conceivable the whereabouts of the owner may not be ascertainable by reasonable means, so the act wisely provides in lieu of notice to him, that the terre tenant may be served. The terre tenant, while not the owner, has one of the attributes of ownership, possession, and in such capacity the law

logically assumes he would wish to protect that possession by notifying the owner of the impending sale, or paying the taxes. If this method of notice fails, then the treasurer is required to post the premises and also a notice of the sale in the court house. Nowhere does the act state the requirements of notice are satisfied by notifying the assessed owner at the time taxes became delinquent, if he, in fact, is not the owner at the time of sale.

It is admitted no notice of the proposed sale was sent to plaintiff, who was not only the record owner of the lot at the time of sale but also assessed on the rolls of Cambria County as such. Thus, the name and whereabouts of the owner could have been readily ascertained by an examination of the assessment records at the time notice of the sale was required.

There has been a tendency in modern times to strengthen tax titles and prevent their invalidation through mere procedural omissions and irregularities: Thompson v. Frazier, 159 Pa. Superior Ct. 395; Beacom v. Robinson, 157 Pa. Superior Ct. 515.

Since the purpose of tax sales is to insure the collection of taxes, land owners who attempt to avoid payment by hiding behind these irregularities should receive no help from the court. However, tax sales being in derogation of the common law, the statutory requirements of notice must be strictly followed to avoid stripping a taxpayer of his property without due process of law. Many cases occur where taxes are unpaid because of oversight or error on the part of taxing authorities or carelessness on the part of a title searcher. Thus, taxing authorities have a certain responsibility to see that such is not the instrument of divesting title to valuable land without notice or opportunity to the owner to protect his title: Ross Appeal, 366 Pa. 100.

While the courts in Pennsylvania fully realize the tremendous problems of the taxing authorities in the collection of taxes, they have set down in recent years guide posts by which the responsibility of these authorities are determined and have reviewed certain fundamental constitutional safeguards to prevent deprivation of property without due process.

In Hess v. Westerwick, 366 Pa. 90, the Supreme Court reaffirms certain broad general principles applicable to the requirement of notice in tax sales. Defendant contends the principles of the Hess case are not applicable because the tax sale was under the Real Estate Tax Sale Law of July 7, 1947, P. L. 1368, as amended, 72 PS §5860.101, et seq. Granted, the proceedings here are not under the Act of 1947 because Cambria County has not accepted its provision. However, after examination of the paper books in the Hess case, we have concluded the treasurer's sale there was under the Act of 1931, even though the Supreme Court in its opinion inadvertently referred to certain provisions of the Act of 1947. Notwithstanding, the general principles of due process apply to all tax sales regardless of statute.

The Hess case does not decide whether notice of a treasurer's sale to one not the actual owner of the property, but who was assessed at the time the taxes became delinquent, was adequate under the Act of 1931. However, Justice Ladner, speaking for the court, succinctly delineates the broad general rules of due process as related to the requirements of notice in tax sales as follows (pages 96-7):

"It is a fundamental provision of both our state and federal constitutions that no person shall be deprived of property except by the law of the land or due process of law. Without due process of law the right of private property cannot be said to exist. As said by Mr. Jus-

tice Pitney in Ochoa v. Hernandezy Morales, 230 U.S. 139, 161 (1912), 'The princple, known to the common law before Magna Charta, was embodied in that charter (Coke, 2 Inst. 45, 50) and has been recognized since the Revolution as among the safest foundations of our constitutions. Whatever else may be uncertain about the definition of the term "due process of law" all authorities agree that it inhibits the taking of one man's property and giving it to another, contrary to settled usages and modes of procedure, and without notice or an opportunity for a hearing'. And see recent case of Mullane v. Central Hanover B. & T. Co., 339 U. S. 306 (1950), holding that the kind of notice must be such as is reasonable under the circumstances.

"In recognition of this right to notice it has been the settled practice in this State extending back for over a century and a half to give the property owner some reasonable notice that his property is to be sold by process of law whether it be by mortgage foreclosure, execution or for tax defaults. Had the legislature provided for no notice at all there is little doubt the Act would have been invalid as offending these fundamental provisions of both state and federal constitutions. Can it then by indirection do what it cannot do directly? Can it direct notice in one breath so to speak and in the next breath practically say it need not be given? To state the proposition is to answer it."

In speaking of "reasonable notice," we believe the court refers to notice which might reasonably be given under the circumstances, or as related to the responsibility of taxing authorities, the use of reasonable means to ascertain the identity of the owner and give him proper notice.

What is reasonable notice as related to this case? At the time notice of the sale was sent out by the treasurer and for nearly a year before, the name and address of the plaintiff-owner was readily ascertainable by a cur-

sory examination of the assessment records. As a matter of good business practice, particularly since the treasurer's records would have disclosed all taxes prior to 1950 and the 1952 taxes had been paid, the assessment record should have been examined. Had this been done and notice given plaintiff, he undoubtedly would have made immediate payment of the delinquent taxes since, as admitted, all taxes subsequent to 1951 had been paid.

We hesitate to set forth in detail the procedure to be followed by the treasurer in determining ownership of properties to be sold at tax sale, other than to say, in the light of this case, an examination of the assessment rolls should be made to determine any changes prior to sale and after the taxes became delinquent. Apparently, the appellate courts are inclined to impose even a greater responsibility on this official.

In Shafer v. Hansen, 389 Pa. 500, the property in question was assessed in the name of Elizabeth Hansen who died in 1942. By the provisions of her last will and testament, duly probated and registered in the office of the register of wills, she devised it to her two sons. Despite the fact that title had passed by devise, the property was continued in assessment under the name of decedent and the taxes paid until 1947. The 1948-50 taxes were returned as delinquent, and the property was sold to plaintiffs' predecessor in title on December 8, 1952, at a treasurer's sale. Notice of the sale was sent to the last known address of decedent, the assessed owner, and receipted for by a person, not identified as, but bearing the same name as, one of her sons, a co-owner of the land. After the period of redemption had expired, the treasurer's deed was recorded and the purchaser conveyed to plaintiffs who then commenced an action to quiet title against the co-owners of the property at the time of the sale. The lower court

granted defendant's motion for judgment on the pleadings and, on appeal, was affirmed by the Supreme Court. In its opinion, the Supreme Court decided the sale was void for two reasons: (1) Notice was not given to the owners; (2) the advertisement listed Elizabeth Hansen as "owner" when, in fact, she was not. In declaring the sale invalid, the court stated, at page 505:

"It is plain enough that the requirements of the Act of 1931, supra, were not complied with; wherefor the sale was invalid."

The case at bar on its facts presents, in our opinion, a more meritorious claim for relief than does the Shafer case above. In that case the only way the taxing authorities could have ascertained the names of the co-owners, devisees of Elizabeth Hansen, other than by personal inquiry (which should have been done by the assessor), was to examine the records of Elizabeth Hansen's Estate. In the case at bar it was only necessary to examine the assessment record at the time of the sale and the name of the actual owner, the plaintiff, together with his address, would have been discovered. This is a far cry from the requirement of examining the provisions of a will as the Shafer case seems to require. We do not presume to analyze the far-reaching effects of the Shafer case on tax sales. However, since that decision flatly stands for the proposition that notice of the proposed sale must be sent to the "owner" or the sale is invalid, it seems to impose upon taxing authorities a greater responsibility to use all available records in determining the status of ownership at the time of sale, otherwise in event of failure of notice, the treasurer and purchaser risk an invalid sale.

Defendant argues that even though notice was not sent to plaintiff, the tax sale was nonetheless valid because the Act of 1931 specifically provides that "no

such sale shall be prejudiced or defeated and no title to property sold at such sale shall be invalidated by proof that such written notice was not served by the treasurer, or that such notice was not received by the owner or terre tenant as herein provided".

In Hess v. Westerwick, supra, that part of the above provision which excuses the failure of the treasurer to mail the required notice of the proposed sale to the owner was held to be an "absurdity" and unconstitutional as a deprivation of property without due process of law. If the notice had been served but not received, then the argument would be pertinent because the risk of loss in the mails would quite properly be on the owner and not the treasurer and purchaser. However, here it is admitted no notice was served on the owner and the argument, therefore, is without merit.

We are of the opinion that failure of the treasurer to serve notice on the owner of the land in question was a fatal defect in the tax sale procedure thus rendering the title of defendant invalid. In arriving at this decision we are guided by the broad general principles of due process set forth in Hess v. Westerwick, supra, and the analogous case of Shafer v. Hansen, supra.

We, therefore, make the following

*Order*

Now, March 12, 1958, at 1:30 o'clock p.m., after argument and consideration of briefs, the motion of plaintiff for judgment on the pleadings is hereby granted, and it is ordered, adjudged and decreed that the deed of Dennis L. Westrick, Treasurer of Cambria County, grantor, to Edw. Baich, grantee, dated October 7, 1953, and recorded in Cambria County in deed book volume 698 at page 645, is invalid and of no effect; the recorder of deeds of Cambria County is

hereby directed and authorized to inscribe on the margin of said deed a notice of this order.

It is further ordered, adjudged and decreed that the title of Ignatius Louis Pejak to all that certain lot of ground situate in the twenty-first ward of the City of Johnstown, County of Cambria and State of Pennsylvania, bounded and described as follows: "FRONTING 44 feet on the westerly side of Boyer Street and extending back the same width between parallel lines a distance of 150 feet to a private alley; having lot now or late of Stanley Pejak on the northerly side and lot now or late of Emma Jane Cartwright on the other side and being known as Lot No. 40 on the Plan of George W. Stutzman," is valid and indefeasible for all purposes as against all rights and claims of defendant, his heirs and assigns, arising from the aforesaid treasurer's deed.

Ignatius Louis Pejak, plaintiff, is hereby directed and ordered to pay unto Edw. Baich, otherwise Edward Baich, defendant, the following sums of money, being taxes, interest and costs, expended by the said defendant in the purchase of the above described property; 1950 taxes and interest, $3.59; 1951 taxes and interest, $2.72; costs of sale, $10.25.