398

## Venango County Treasurer's Report
## On Tax Sale

*Nesbit & Wasson,* for exceptants.

*F. Harold Gates,* contra.

McCRACKEN, P. J., July 13, 1959.—This matter comes before the court on exceptions filed by Callen L. Hull and Shirley Ann Hull, his wife, of Oilcreek Township, Venango County, Pa., to the report and return of the County Treasurer of Venango County of sales held by said treasurer for delinquent taxes for the year 1956.

It appears from the record that Callen L. Hull and Shirley Ann Hull, his wife, the exceptants, are the owners of a parcel of land containing one acre situate in Oilcreek Township, Venango County, Pa.; that they acquired the title to said property from Alan N. Latchaw and Myrtle Joan Latchaw, (formerly Myrtle Joan Felts), his wife, by deed dated January 6, 1956, and recorded on January 10, 1956, in deed book no. 600, page 235; that on April 9, 1958, the said Callen L. Hull conveyed the property to himself and Shirley Ann Hull, his wife, by deed recorded on May 2, 1958, in deed book no. 624, page 21; that the said Callen L. Hull entered into possession of said land immediately upon

his purchase thereof on January 6, 1956, and has been in actual possession thereof since that time. The record also shows that for the years 1955 and 1956, the property in question was assessed to Alan Latchaw and Myrtle Joan Felts and that for the years 1957, 1958 and 1959 it has been assessed to Callen L. Hull. The taxes assessed against said land for the year 1956 were not paid to the collector, and therefore, were returned as unpaid taxes to the county treasurer's office and were sold to Gage Allam by the county treasurer on August 4, 1958 in the name of "Latchaw, Alan & Myrtle Joan Felts."

Exceptants contend that they were the record owners and in possession of the said land at the time of said treasurer's sale, to wit, August 4, 1958, and that the said treasurer's sale was void because no notice was given to them or either of them, as required by law, by the county treasurer prior to said sale.

The record shows, also, that the property was included in the legal advertisement appearing in the newspapers prior to the sale, and it further appears by the evidence that a notice was sent by registered mail by the county treasurer to, and that the same was received by, Alan Latchaw, the former owner of the property. There was no evidence that any notice was sent to either Callen L. Hull or Shirley Ann Hull, his wife, prior to the treasurer's sale.

The tax sale proceeding here in issue is governed by the Act of May 29, 1931, P. L. 280, sec. 7, as amended, 72 PS §5971g, which provides that the county treasurer shall advertise the holding of sale for delinquent taxes, setting forth in said advertisement the purpose, time, place, term, ownership and reputed ownership, description of the property and the amount of taxes and interest due. Said act further provides:

"In addition to such advertisement, at least ten days before any such sale, written notice thereof shall be

served by the county treasurer, by registered mail, upon the owner of such land, and if the whereabouts of the owner is unknown, such notice shall be served by registered mail upon the terre tenant, if any. If such notice cannot be served in said manner on the owner or terre tenant, then such notice shall be served by the county treasurer by posting the same in the court house and at a conspicuous place on the premises. If notice was mailed as herein required, no such sale shall be prejudiced or defeated and no title to property sold at such sale shall be invalidated by proof that such written notice was not received by the owner or terre tenant as herein provided."

The question to be resolved is whether a tax sale under the Act of 1931 is invalid where notice of such sale was not sent to the actual owner of the land, even if notice had been sent to a predecessor in title in whose name the property was assessed at the time the taxes became delinquent.

The wording of the Act of 1931, above quoted, is clear and unambiguous. It requires that notice shall be served by the county treasurer on the owner of such land. Since the act requires that written notice shall be served by the county treasurer by registered mail upon the owner of such land, it would appear that the word "owner" could only refer to the one in whom title was vested as that time. Obviously, the purpose of the notice is to afford the owner opportunity to protect his estate or interest in the land proposed to be sold. Notice to one who had no interest to protect at the time of sale would be futile and serve no purpose whatsoever. We must conclude, therefore, that the word "owner" as used in the above quoted section of the Act of 1931 is restricted to one having a present estate or interest in the property proposed to be sold and does not mean the assessed owner at the time the taxes became delinquent, even though he be a predecessor in

title. This act provides further that if the whereabouts of the owner are unknown, that notice shall then be served on the terre tenant, and if such notice cannot be served in either manner, then such notice shall be served by the county treasurer by posting a notice in the court house and at a conspicuous place on the premises. Nowhere does the act state that the requirements of the notice are satisfied by notifyng the assessed owner at the time the taxes became delinquent, if he, in fact, is not the owner at the time of sale.

Since the purpose of tax sales is to insure the collection of taxes, landowners who attempt to avoid payment by hiding behind these irregularities should receive no help from the court. However, tax sales being in derogation of the common law, a statutory requirement of notice must be strictly followed to avoid stripping a taxpayer of his property without due process of law. Many cases occur where taxes are unpaid because of oversight or error on the part of the taxing authorities or carelessness on the part of a title searcher. Thus, taxing authorities have a certain responsibility to see that such is not an instrument of divesting title to valuable land wthout notice or opportunity to the owner to protect his title: Ross Appeal 366 Pa. 100.

While the courts in Pennsylvania fully realize the tremendous problems of the taxing authorities in collection of taxes, they have set down in recent years guide posts by which the responsibility of these authorities are determined and have reviewed certain fundamental constitutional safeguards to prevent that deprivation of property without due process.

In the case of Hess v. Westerwick, 366 Pa. 90, 96, 97, the Supreme Court reaffirmed certain broad general principles applicable to the requirement of notice in tax sale. While the Hess case does not decide whether notice of the treasurer's sale to one not the actual

owner of the property but who was assessed at the time the taxes became delinquent was adequate under the Act of 1931, that court does succinctly delineate the broad general rules of due process as related to the requirements of notice in tax sale. In that case the court said:

"It is a fundamental provision of both our state and federal constitutions that no person shall be deprived of property except by the law of the land or due process of law. Without due process of law the right of private property cannot be said to exist." And said court further says, "In recognition of this right to notice it has been the settled practice in this State extending back over a century and a half to give the property owner some reasonable notice that his property is to be sold by process of law whether it be by mortgage foreclosure, execution or for tax defaults."

In speaking of "reasonable notice," we believe the court refers to notice which might reasonably be given under the circumstances, or as related to the responsibility of taxing authorities, the use of reasonable means to ascertain the identity of the owner and give him proper notice.

At the time notice of tax sale was sent by the treasurer and for over a year prior thereto, the name and address of exceptants were readily ascertainable by a cursory examination of the assessment records. Had this been done and notice given to exceptants, they undoubtedly would have made immediate payment of the delinquent taxes assessed against their property.

We do not intend to outline the procedure to be followed by the treasurer in determining ownership of properties to be sold at a tax sale other than to say that an examination of the assessment role should at least be made to determine any changes prior to sale after the taxes became delinquent. Apparently the appellate courts are inclined to impose even a greater responsi-

bility on the official. In the case of Shafer v. Hansen, 389 Pa. 500, the property in question was assessed in the name of Elizabeth Hansen, who died in 1942, and the court held the sale void because one of her sons did not receive a notice from the county treasurer of the intended sale. In that case, there had been no change in the assessment records after Mrs. Hansen's death up to the time of sale, and the only way the taxing authorities could have ascertained the names of the owners, other than by personal inquiry which possibly should have been done by the assessor, was to examine the will and the records in decedent's estate. While it is not necessary in this case to analyze the far-reaching effects of the Shafer case on tax sales, we do note that the decision flatly stands for the proposition that notice of the proposed sale must be sent to the "owner" or the sale is invalid; and that it seems to impose on taxing authorities a greater responsibility to use all available records in determining the status of ownership at the time of sale; otherwise, in event of failure of notice, the treasurer and purchaser risk an invalid sale.

In the case of Pejak v. Baich, 15 D. & C. 2d 138, which was a case almost identical with the case at issue, the court held that the sale was invalid because notice was not mailed or given to the record owner of the property at the time of sale.

We are of the opinion that failure of the county treasurer to serve notice on the owner of the land in question at the time of sale was a fatal defect in the tax sale procedure and thus rendered the sale invalid and ineffective as to exceptants' property. We, therefore, make the following order:

Now, July 13, 1959, after hearing on the exceptions filed by Callen L. Hull and Shirley Ann Hull, his wife, to the report and return of the county treasurer of the treasurer's sale held August 4, 1958, for the unpaid

taxes for the year 1956, it is ordered, adjudged and decreed:

1. That exceptions filed by Callen L. Hull and Shirley Ann Hull, his wife, to the treasurer's sale, aforesaid, are sustained;

2. That the county treasurer shall mark the record of said treasurer's sale void and shall not make any deed pursuant thereto;

3. That the moneys paid by the purchaser be refunded to her;

4. That the treasurer's report of sales, other than the ones to which exceptions have been filed and sustained, be and the same is hereby confirmed absolutely.

5. The costs, if any, in connection with these exceptions shall be paid by the County of Venango.