Blasi *v.* Alexander et al., Appellants.

Argued March 22, 1961. Before RHODES, P. J., ERVIN, WRIGHT, WOODSIDE, WATKINS, MONTGOMERY, and FLOOD, JJ.

*Joseph F. Mulcahy, Jr.,* with him *Edward D. McLaughlin,* for appellants.

*Harry J. Martin, Jr.,* for appellee.

OPINION BY FLOOD, J., June 15, 1961:

In this case the plaintiff purchased lots Nos. 24 and 25 known as 800 Burton Street, Darby Township, Pennsylvania, at a treasurer's sale, on August 26, 1953, for unpaid taxes due to the County of Delaware for the year 1951 for the sum of $68.70. The property was assessed in the name of Charles Alexander Estate. On February 20, 1957, plaintiff commenced this action to quiet title against the defendants who are the surviving children and legal heirs of Charles Alexander.

Charles Alexander owned this property at the date of his death in 1943, his wife having predeceased him. No will of either parent was filed and no administration of the estates of Charles or Edith Alexander was ever raised, nor was anything filed in any county office showing the succession of the defendants to the title.

Two of the heirs, Edward Alexander and Joseph Alexander, were living in the property in 1951. Taxes up to and including 1950 were paid in full. The records in the assessment office showed that they were paid for the last years before 1951 by Sarah Alexander, who is the wife of Joseph Alexander.

No notice of the tax sale was sent or delivered to any of the heirs. The notice was directed to "Charles Alexander Estate, c/o Sarah Alexander", 800 Burton Street, Sharon Hill, Delaware County. Sarah Alexander was not one of the heirs although she was the wife of one of them. The notice was actually delivered to a young child, Josephine Alexander, daughter of Joseph and Sarah, upon the property at 800 Burton Street.

The General County Assessment Law of May 22, 1933, P. L. 853, §407(b), 72 PS 5020-407(b), requires the county commissioners or the board for assessment and revision of taxes to give to the local assessor before he enters upon the discharge of his duty as assessor a statement of all conveyances of real estate in his district to be used by him in making the assessment in the name of the owners and ascertaining the value of the real estate. Section 407(c) of this act, 72 PS 5020-407(c), makes it the duty of the assessor to ascertain the owner or owners of each parcel of ground assessed, at the time of such assessment, and to assess it "in the name of the then owner or owners, as thus appears in such statement, unless to his personal knowledge there has been thereafter a change in the ownership so that such . . . parcel . . . of real estate shall be assessed in the name of the then owner or owners.".

The fact that the property was listed on the tax assessors' rolls not in the name of Charles Alexander, but in the name of Charles Alexander Estate, makes it appear that some change of ownership was known to the tax assessor at the time of the tax assessment for 1951 and the tax sale in 1953. But presumably the assessor never took it upon himself to find out who the heirs of Charles Alexander were and therefore never assessed the property to the real owners who are the defendants in this case.

Section 417 of The General County Assessment Law of 1933, 72 PS 5020-417, provides that a property may be assessed in the name of deceased only so long as the same shall belong to the estate. The Supreme Court held in *Shafer v. Hansen*, 389 Pa. 500, 133 A. 2d 538 (1957), that by allowing ten years to go by after the former owner's death without ascertaining the name of the then owner or owners "It is too evident for discussion that the assessor failed to ascertain timely the owner of the property here in question as The General County Assessment Law required him to do". Here the death was in 1943, the assessment was for 1951, the sale was held in 1953, and no change had yet been made on the assessment roll by 1960.

The governing statute as to notice of sale is the Act of May 29, 1931, P. L. 280, §7, 72 PS 5971(g). The act as it existed in 1951, and at the time of the sale on August 26, 1953, read:

"In addition to such advertisement, at least ten days before any such sale, written notice thereof shall be served by the county treasurer, by registered mail, upon the owner of such land, and if the whereabouts of the owner is unknown, such notice shall be served by registered mail upon the terre tenant, if any: Provided, however, That no such sale shall be prejudiced or defeated and no title to property sold at such sale shall be invalidated by proof that such written notice

was not served by the treasurer, or that such notice was not received by the owner or terre tenant as herein provided." The language of the proviso of this act seems clearly to make plaintiff's title good because under its terms no sale shall be invalidated or prejudiced by proof that the notice was not served by the treasurer upon, or received by, the owner or terre-tenant. However the Supreme Court has held that this provision, if taken literally, is unconstitutional. *Hess v. Westerwick*, 366 Pa. 90, 76 A. 2d 745 (1950). It held that the proviso insofar as it attempted to validate tax sales when no notice was served, was inoperative as a violation of due process.[1]

Later the question came before the Supreme Court in *Shafer v. Hansen*, supra, in a situation so much like the one before us that we think it governs this case. There the testatrix died in 1942 leaving certain property by will to her two sons who were named as executors. Although the will was probated, nothing was done to change the record ownership on the county assessor's rolls and the property continued in the name of the decedent. In the *Shafer* case, the defendants, as in this case, failed to seek out the tax collectors and pay the taxes for the years in question. They took no steps to have the ownership of the property changed on the tax rolls. The records in the county treasurer's office indicated that the taxes were paid during the years following the testatrix' death by various persons —in one year by the dead woman. In no instance did it appear that they were paid by either of the heirs. The Court seemed to be impressed by the fact that the deed had not been put on record until December 9, 1954, almost two years after the tax sale and just before redemption period expired. (In this case the tax

---

[1] The proviso was eliminated by the Act of May 6, 1955, P. L. 46 §1.

deed had not been put on record by the plaintiff more than six years after the tax sale, the plaintiff has not paid any taxes since the sale to him, and nothing in the record appears to indicate any attempt to collect the taxes by sale or otherwise in this seven-year period.)

The court, in addition to finding that the assessor had not timely ascertained the owner of the real estate, also held that in any event before a valid sale for unpaid taxes could be made some form of notice would first have to be given to the owner or, if this could not be accomplished, then to the terre-tenant of the property. It is to be noted that it is not notice to the "tenant" which is required but notice to the "terre-tenant". In Pennsylvania law terre-tenant is one who becomes the legal owner of a debtor's real estate after the lien has attached: *Hulett v. Mutual Insurance Co.*, 114 Pa. 142, 6 A. 554 (1886); *Lipshutz v. Plawa*, 393 Pa. 268, 271, 141 A. 2d 226 (1958). Act of July 3, 1947, P. L. 1234, §3(d), 12 PS §879. As Chief Justice Gibson expressed it, "only the debtor's subsequent grantee of the fee simple is a terre-tenant." *Mitchell v. Hamilton,* 8 Pa. 486, 491 (1848). Here there was no terre-tenant in 1953 at the time of the sale other than heirs.

The Court in *Shafer v. Hansen,* supra, also said that the registered mail notice of the proposed tax sale was not mailed to either of the co-owners of the property and it was noted that by stipulation " '[n]o notice of the intended sale of December 8, 1952 was given to any tenant of the premises in question.' " As to the fact "that, more than ten days before the sale, notice thereof by registered mail was addressed to 'Elizabeth Hansen' (the name of testatrix) at the street and number of the property, and the return receipt therefor bore the signature 'Walter J. Hansen' ", the Court said:

"Whether the receipt was actually signed by Walter J. Hansen, one of the co-owners of the property, or that

it ever came to his attention, does not appear. In any event, no notice of the intended sale was ever given by registered mail or otherwise, to James T. Hansen, the other co-owner of the property." The Court held that the requirements of the act above-quoted were not complied with and therefore the sale was invalid.

In the case before us the registered mail notice was addressed to the estate of the deceased owner, and delivered to the street and number of the property, but there was no evidence that notice actually reached any of the co-owners or terre-tenants. The return receipt did not even bear the purported signature of one of the co-owners as it did in the case of *Shafer v. Hansen,* supra. The only testimony on this point is that of James Alexander, one of the two co-owners living on the property, who said that he was never notified before the sale. There was no evidence of any attempt to bring the notice of the proposed sale to the attention of the other co-owner then living on the property, Edward Alexander, or any of the other heirs. The notice was actually directed to the attention of Sarah Alexander, James' wife, who was not one of the terre-tenants although she resided on the property. There is no evidence that even Sarah received the notice. The return receipt bore the signature of her young daughter. It thus appears that we have here an attempted notice that was even further from compliance with the statute than the notice held insufficient in *Shafer v. Hansen,* supra. We conclude that the tax sale under which the plaintiff claims title in this case was invalid and the decree of the court below must be reversed.

The decree of the court below is reversed and the complaint and the record is remanded to the court below for the purpose of a decree in favor of the defendants.

DISSENTING OPINION BY ERVIN, J.:

I am concerned about the definition given to a terre-tenant in the majority opinion. The governing statute as to notice of sale is the Act of May 29, 1931, P. L. 280, §7, 72 PS §5971(g). The act as it existed in 1951, and at the time of the sale on August 26, 1953, read: "In addition to such advertisement, at least ten days before any such sale, written notice thereof shall be served by the county treasurer, by registered mail, upon the owner of such land, and if the whereabouts of the owner is unknown, such notice shall be served by registered mail upon the terre-tenant, if any. . ."

I do not believe that the legislature intended that a terre-tenant was "the legal owner of the debtor's real estate after the lien has attached." I believe that the legislature meant that "if the whereabouts of the owner is unknown," the notice was to be served by registered mail upon the occupant or possessor of the property, if any. The majority's interpretation of this act leads to a ridiculous result. Surely the legislature could not have meant: Serve the owner but if you can't find him serve the owner. The interpretation which I have given to the act at least makes sense. This interpretation is in accord with the preferred meaning of the word "terre-tenant".

In Webster's Unabridged Dictionary, 2d edition, a terre-tenant is defined as follows: "Law. One who has the actual possession of land; the occupant of land; often, one seized and in possession of land.

"A terre-tenant in a general sense is one who is seized or actually possessed of lands as the owner thereof. 114 Pa. 146."

In Bouvier's Law Dictionary Unabridged, Rawle's Third Revision, a terre-tenant is defined as follows: "One who has the actual possession of land; but, in a more technical sense, he who is seised of the land; and in the latter sense the owner of the land, or the person

seised, is the terre-tenant, and not the lessee. . . . It has been holden that mere occupiers of the land are not terre-tenants. See Chahoon v. Hollenback, 16 S. & R. (Pa.) 432, 16 Am. Dec. 587; 2 Bla. Com. 91, 328; Hulett v. Ins. Co., 114 Pa. 146, 6 Atl. 554."

Terre-tenant, in 31 C.J.S., p. 11, is defined as follows: "A person in actual possession or occupation of land; a tenant, holder, or occupier of land; also, but less frequently, the owner of the legal, as distinguished from the equitable estate. In a general sense, one who is seized or actually possessed of lands as the owner thereof."

In *Hulett v. Mutual Life Ins. Co.*, 114 Pa. 142, 6 A. 554, the opinion starts as follows: "A terre tenant, in a general sense, is one who is seised or actually possessed of lands as the owner thereof. In a scire facias sur mortgage or judgment, a terre-tenant is, in a more restricted sense, one, other than the debtor, who becomes seised or possessed of the debtor's lands, subject to the lien thereof. Those only are terre-tenants therefore, in a technical sense, whose title is subsequent to the incumbrance: Chahoon v. Hollenbach, 16 S. & R. 425."

"Words . . . shall be construed . . . according to their common and approved usage. . ." Act of May 28, 1937, P. L. 1019, art. III, §33, 46 PS §533.

Statutes are presumed to employ words in their popular sense: *Com. v. Bay State Milling Co.*, 312 Pa. 28, 167 A. 307.

This was not a scire facias sur mortgage proceeding. So far as the record discloses there was no mortgage upon the property. This was merely a treasurer's sale for unpaid taxes. According to the majority, you could never have a terre-tenant except where there was a prior lien and a taking by a subsequent owner subject to that lien. Certainly the legislature intended to supply a method of service to fit all sales—not merely those where you had a prior lien.

It would invalidate too many treasurers' sales if service on the occupier of the land in the absence of the owner were not held to be good and would greatly discourage purchasers at treasurers' sales. In the present case the notice got to the wife of one of the present owners, who was an occupant of the property, and I would affirm the decree of the court below.

RHODES, P. J., joins in this dissenting opinion.