**UNITED STATES of America, Plaintiff,**

v.

**137.02 ACRES OF LAND, MORE OR LESS, Situate IN CENTRE COUNTY, COMMONWEALTH OF PENNSYLVANIA, and American Marietta Company, et al., Defendants.**

**Civ. A. No. 10280.**

United States District Court, M. D. Pennsylvania.

Nov. 30, 1971.

---

Harry Nagle, Jr., Lewisburg, Pa., for plaintiff.

William W. Litke, Bellefonte, Pa., for defendant Thomas Gates.

McNees, Wallace & Nurick, Harrisburg, Pa., for defendant American Marietta Co.

E. Humes Garber, Radnor, Pa., for defendant Atlantic Richfield Co.

Austin O. Furst, Bellefonte, Pa., for defendants Evelyn Shultz & Martha Etters Burden, Widow, Heirs of Pearl Leathers, a/k/a Clara Pearl Leathers, deceased.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

MUIR, District Judge.

This matter is before the Court for a determination of the proportion of the total agreed just compensation for a tract of condemned land situate in Centre County owing to Thomas Gates, the holder of a tax title declared invalid by this Court on May 5, 1971. Gates claims reimbursement for taxes paid and improvements made on the land. A full recital of the facts in this case is contained in the Opinion of May 5, 1971, D.C., 326 F.Supp. 4.

### FINDINGS OF FACT

#### I. TAXES PAID BY GATES.

1. On August 13, 1956, Thomas A. Gates paid the sum of One Hundred One Dollars and Ninety-three Cents ($101.-93) to the Centre County Treasurer for property of the Pearl Leathers Estate sold to him at a tax sale. (Stipulation)

2. On June 2, 1959, Thomas A. Gates paid the following taxes due on the property in question to the Centre County Treasurer:

| | |
|---|---|
| For the Year 1955 | $14.36 |
| For the Year 1956 | 14.53 |
| For the Year 1957 | 14.32 |
| For the Year 1958 | 15.92 |
| For the Year 1959 | 18.68 |

(Stipulation)

#### II. IMPROVEMENTS MADE BY GATES.

3. At the time of the tax sale, a house in poor repair stood on the lot in question.

4. The condition of the structure was such that it was of no value as a house and was a hazard and an eyesore.

5. The material of which the structure consisted had no salvage value.

6. Sometime between 1959 and 1962, Thomas Gates razed the house with the assistance of Carl McCartney.

7. In razing the house, Thomas Gates worked a total of 96 hours.

8. Carl McCartney worked a total of 30 hours to raze the building.

9. The going wage rate for the work performed in razing the house in question at that time was two dollars ($2.00) per hour.

## III. IMPROVEMENTS MADE BY TIMOTHY GATES IN CONSIDERATION FOR TRAILER SPACE.

10. In 1962, under an agreement with his brother Thomas Gates, Timothy Gates placed his house trailer on the property in question and lived there rent-free in return for making certain improvements on the land.

11. With a bulldozer, Timothy Gates hauled several tons of shale to the site of the razed house and filled the foundation.

12. Pursuant to the same agreement, between fall of 1962 and spring of 1966 Timothy Gates hauled two hundred tons of topsoil to the site of the razed house and landscaped the lot.

13. The cost of two hundred tons of topsoil in 1962 was $400.00.

14. As part of his performance of the same agreement, Timothy Gates built a spring house of 8″ block and installed a spring drain of well-casing, at a cost of $200.00.

15. Under the same agreement, Timothy Gates installed a septic system at a cost of $500.00.

16. Timothy Gates made these improvements partly in satisfaction of his agreement with Thomas Gates and partly for his own benefit during the three and one-half years he lived on the lot in question.

## IV. TOTALS OF EXPENDITURES.

17. The total cost to raze the house was $252.00.

18. The total cost of the operations performed by Timothy Gates was $1,100.00.

## V. VALUE OF IMPROVEMENTS.

19. The value in 1968 of the improvements made by Thomas Gates was $700.00.

## DISCUSSION

Defendant Thomas A. Gates has claimed as his legal share of the agreed just compensation for the lot in question (1) the amount he paid at the tax sale in 1956, (2) the taxes paid by him for the years for which his payments are ascertainable,[1] 1955–1959, and (3) the value of improvements he made to the property between 1959 and 1966. We shall consider these claims *seriatim*.

It would appear that the law in Pennsylvania is settled that a purchaser at a defective tax sale is not entitled to reimbursement for either money expended to purchase property at the tax sale or real estate taxes paid thereafter, under the circumstances of this case. In Gaul v. McLaughlin, 207 Pa.Super. 434, 217 A.2d 757 (1966), such purchasers are classified as volunteers, who, not being legally obligated to make such payment, have no right to reimbursement from the rightful owners, after the expiration of the two-year redemption period as provided in the Act of May 29, 1931, P.L. 280, § 15; 72 P.S. § 5971o. The teaching of Shafer v. Hansen, 389 Pa. 500, 133 A.2d 538 (1957), is not contrary. There, in ordering [2] defendants to pay plaintiffs "an appropriate amount to reimburse plaintiffs for tax moneys expended and accrued interest, appropriately to be paid by defendants according to law for the moneys expended by the plaintiffs in the purchase at Treasurer's sale of the defendants' property," the

---

1. Because of the impossibility of proving his actual payment defendant waives his claim for real estate taxes paid in the years 1960–1967.

2. Id. at 506, 133 A.2d at 541.

Court merely enforced a *stipulation of the parties* as to the nature of relief upon a disposition favorable to the defendants—relief which was fair in light of the bad faith of the tax title holder, who recorded his tax deed one day after the redemption period had expired. The narrow question of the right to reimbursement was not there presented.

For these reasons, defendant's claims (1) and (2) cannot be sustained.

 The law is clear that the purchaser at a defective tax sale is entitled to the value of improvements made on the land in reliance on the validity of the tax deed. Act of April 12, 1842, P. L. 262, § 20, 72 P.S. § 5875. Cramer v. Conn, 204 Pa.Super. 2, 5, 201 A.2d 261 (1964). The Intervenor Defendants do not contend otherwise, but it is their position that because Gates' tax deed was dated December 7, 1956, and not recorded until June 24, 1968, or nearly eight months after the condemnation became effective, on October 30, 1967, Gates can recover no part of the agreed just compensation. United States v. 3276.21 Acres of Land, 194 F.Supp. 297 (S.D. Cal.1961), cited by Intervenor Defendants, does not sustain their position, for it holds simply that in making the determination as to who shall be defendants, the government may rely on the state of the title at the date of taking and name as defendants those who appear of record as the owners. On the question of distribution of the proceeds, the Court observed: "The defendant land owners cite California law as to when title passes. In a proceeding after the award has been fixed, to distribute the proceeds, this law would be pertinent." Thus, far from holding that only owners of record are entitled to such proceeds, the California District Court distinguished the questions (1) Who shall be

made defendants when the government files the action? and (2) Who is entitled to the compensation for the property? [3]

Although it is true that some tax deeds are required *before delivery* to "be recorded in the office for the recording of deeds at the cost of the purchaser," under Act of July 7, 1947, P.L. 1368, art. VI, § 608, as amended, 72 P.S. § 5860.608, no similar requirement for a Treasurer's deed exists. The act of May 29, 1931, P.L. 280, § 14, 72 P.S. § 5971n [4] requires "each such deed to be duly acknowledged in the court of common pleas, and such acknowledgment shall be duly entered and recorded by the prothonotary of said court in the treasurer's deed book * * *." The acknowledgment of the deed in the instant case was taken in open court on December 10, 1956, by the President Judge of the Court of Common Pleas of Centre County and such acknowledgment was recorded in Treasurer's Deed Book No. 1 at page 118. The deed itself was recorded in the Office of the Recorder of Deeds of Centre County on June 24, 1968.

 Recording of the acknowledgment of the deed in the Treasurer's deed book satisfies the recording requirements for Treasurers' deeds. Furthermore, the scope of protection afforded by the recording laws extends only to bona fide purchasers, mortgagees and judgment creditors. Act of June 12, 1931, P.L. 558, No. 191, § 1, 21 P.S. § 351. Heirs, who have given nothing of value in return for title, are not in the position of bona fide purchasers, mortgagees and judgment creditors. It follows, therefore, that Gates' tax deed, although void, is not rendered invalid, as to Intervenor Defendants, for the purpose of determining his right to share in

---

3. In answer to this question, the Court observed, at 301: "The escrows have been completed and if certain monies from the deposit have been paid to the record owners as they appeared at the date of taking, in equity they would be required to transfer the money to the persons who,

through the escrows, were entitled thereto."

4. This Act was repealed insofar as it applied to taxing districts coming within the provisions of 72 P.S. §§ 5860.101–5860.803, but remains applicable to the instant sale.

the proceeds to the extent of the value of the improvements he made on the land.

█ The Act of April 12, 1842, P.L. 262, § 20, 72 P.S. § 5875 allows recovery for "the value of the improvements made." It is the value of the improvements and not their cost which measures the right of recovery of the holder of defective title. The statute derives from the equitable principle that when a bona fide possessor of property makes improvements upon it, in good faith and under an honest belief of ownership, and the real owner seeks relief in a court of equity, the real owner will be made to do equity—under the maxim that he who seeks equity must do equity—by paying for the improvements "as far as they are permanently beneficial to the estate and enhance its value: Story's Equity, 779; Pomeroy's Equity, 1241." See the learned discussion of Judge Stewart in Groner v. Keith, 21 Pa.Dist. & Co.R. 347, 350–351 (C.P. of Northampton Co., 1934).

The cost of improvements has been held to be some evidence of their value. Strathern v. Borough of Braddock, 11 Pa.Super. 1 (1899).

## CONCLUSIONS OF LAW

1. Thomas Gates is not entitled to reimbursement for the $101.93 purchase price paid to the Centre County Treasurer at the tax sale.

2. Thomas Gates is not entitled to reimbursement for real estate taxes paid by him on the property in question for the years 1955–1959.

3. Thomas Gates is not entitled to reimbursement from Intervenor Defendants for the value of improvements Gates made to the real estate between 1960 and 1966.

4. Thomas Gates' equitable proportion of the agreed just compensation for the condemned premises is seven hundred dollars ($700.00).