435 A.2d 1275

**Frank J. FIDEI and Joe M. Lena, Appellants,**

v.

**Fred P. UNDERWOOD, his Unknown Heirs, Assigns or Devisees.**

Superior Court of Pennsylvania.

Argued Jan. 14, 1981.

Filed Oct. 16, 1981.

Petition for Allowance of Appeal Denied Jan. 29, 1982.

Robert J. Milie, Greensburg, for appellants.

George M. Lynch, Latrobe, for appellee.

Before SPAETH, SHERTZ and MONTGOMERY, JJ.

MONTGOMERY, Judge:

The instant appeal arises from an order of the lower court, sitting *en banc*, which sustained the exceptions filed by the Defendant-Appellees and dismissed the Plaintiff-Appellants' Complaint. The case involves an action to quiet title commenced by the Plaintiff-Appellants, who purchased property at a Treasurer's sale. The Defendant-Appellees are the heirs of the deceased former owner of the property.

The record shows that on May 8, 1926, Fred P. Underwood purchased a tract of land situated in Derry Township, Westmoreland County, from the Baum Coal Company. The property consisted of some 35⅕ acres. On August 8, 1947,

Fred P. Underwood died testate, and by the residuary clause in his will the property in question passed to his three sons, James M. Underwood, Joseph R. Underwood and Thomas P. Underwood. They, or their respective heirs, are the real Appellees.

Taxes assessed against the property for the tax years 1953 and 1954 were not paid, and on August 6, 1956 the County Treasurer sold the property to the Westmoreland County Commissioners. No right of redemption was ever exercised. Notice of the proposed Treasurer's sale was sent to "Fred P. Underwood, Latrobe, Pennsylvania," the then-deceased owner, but the letter containing the notice was returned marked as "unclaimed". No notice was ever given by the Treasurer to the Appellees, the then true owners of the property, as required by the County Return Act of 1931,[1] nor was any notice of the sale posted on the property itself by the Treasurer prior to the sale, an alternative method of service provided in the same Act. The Treasurer did give newspaper notice, which is also required under the aforementioned statute, that the property would be sold. Notice was given in the County Law Journal and in two newspapers of general circulation that two properties belonging to Fred P. Underwood would be sold. Such newspaper notices described the properties as: "12A Freeport Coal" and "34⅕ A." of land in Derry Township. No other descriptions of the property were given.

In 1975 the Appellants purchased the subject property from the Westmoreland County Commissioners. Subsequently they filed the instant action to quiet title against Fred P. Underwood, his unknown heirs, assigns or devisees.

The lower court initially found the sale of the land to the Appellants to be valid. After the Appellees filed exceptions, however, the lower court, sitting *en banc*, sustained the Appellees' exceptions and dismissed the Appellants' Complaint. In its Opinion the trial court found that the descrip-

1. See the Act of May 29, 1931, P.L. 280, § 7, as amended, 72 P.S. 5971g, which was applicable to Westmoreland County at the time of the sale.

tion of the property in the newspaper advertisements was legally sufficient, citing for authority the decisions of the Supreme Court in *Bannard v. New York State Natural Gas Corp.*, 448 Pa. 239, 293 A.2d 41 (1972) and *Boulton v. Starck*, 369 Pa. 45, 85 A.2d 17 (1951). Further, the trial court found that the defects in service of notice of the sale, as required by the County Return Act of 1931 (72 P.S. § 5971g), were validated by the curative provisions set forth in the Act of November 26, 1978, P.L. 1294, No. 310, § 1, immediately effective, 21 P.S. § 283.3.[2] Subsequently, in an opinion explaining its reversal of the trial court's decision, the court *en banc* stated that the trial court had given too broad an application to the 1978 curative Act. The court *en banc* noted that the County Return Act of 1931 required the County Treasurer to serve notice upon the *owner* of the land. At the time the taxes became delinquent, and at the time of the sale, the owners were the aforementioned sons of Fred P. Underwood. However, the notices were sent to the father, who by then had been deceased for several years.[3] For these reasons, the court *en banc* found that more than a simple cure of a technically defective notice was required, as there was *no* notice to the then-existing true owners. The

**2.** The Act of November 26, 1978 provides:
Whenever, prior to December 31, 1964, any property was sold by a county treasurer for the purpose of securing the payment of delinquent taxes which were assessed and levied against such property, and no proof of service was filed or in lieu of personal service the property was not properly posted or if it was properly posted the certificate of posting was not filed or as if the proof of service had been filed, or if no proof was filed, if, in all other respects the law relating to the holding of such sale was fully compiled with, all such sales and county treasurer's deeds are hereby ratified, confirmed and validated and the title to any such property purchased by any person or by the county commissioners of the county is hereby declared to be as valid as if the proof of service had been filed or as if the property had been properly posted or the certificate of posting had been properly filed.

**3.** The court *en banc* pointed out that the tax assessment records then still listed the decedent as the owner, but that his estate no longer owned it. The General County Assessment Law, Act of May 22, 1933, P.L. 853, art. IV, § 417, 72 P.S. § 5020–417, permits the assessment of property in the name of the decedent only so long as the property shall still belong to the estate of such deceased person.

court *en banc* concluded that the Act of November 26, 1978 did not apply in such circumstances, and held the sale to be invalid. In sustaining the exceptions filed by Defendant-Appellees and dismissing the Complaint, the court *en banc* rejected an alternative claim for reimbursement of various expenses by Plaintiff-Appellants, a subject which will be more fully discussed later in this Opinion.

After a thorough review of the total record, we have concluded that the lower court *en banc* was correct in holding that the unquestioned defects in the 1956 tax sale proceedings in this case could not be cured by the application of the Act of November 26, 1978. That Act, by its terms, is clearly intended to validate pre-December, 1965 tax sale proceedings involving only minor technical defects. Defects such as the filing of a proof of service may not be equated with a total failure by the County Treasurer to effect *any* notice to the true owner or owners, in this case the sons of the deceased former owner.[4] The Act of November 26, 1978 may not be held to provide a cure for such serious procedural defects.[5] It has been held that the notice provisions of a tax sale statute must be strictly complied with to guard against deprivation of property without due process. See *Patterson v. Oakes*, 260 Pa.Super. 415, 394 A.2d 995 (1978). The failure of any actual or attempted notice to the *true* owners completely contravened the provisions of the County Return Act of 1931, cited *supra*, and the August, 1956 Treasurer's sale must be invalidated. Compare *Blasi v. Alexander*, 195 Pa.Super. 634, 171 A.2d 904 (1961).

**4.** In this case, any blame is probably correctly placed in the office of the County Assessor in 1956. The Assessor had (and has) the duty, under law, to ascertain the owner of each tract of land at the time of each assessment of taxes. See The General County Assessment Law, Act of May 22, 1933, § 407(c), as amended, 72 P.S. § 5020–407(c); *Shafer v. Hansen*, 389 Pa. 500, 133 A.2d 538 (1957).

**5.** Because we reach this conclusion, it is not appropriate that we examine the issue of whether the curative Act of November 26, 1978 violates due process Constitutional guarantees, as argued by the Appellees. Also, we need not pass upon the Appellees' contention that the description of the property was insufficient in the advertised notices of the sale.

We are left with the Appellants' remaining contention that, even if the sale was not valid, the lower court erred in refusing to order reimbursement to them for several items of expense they claimed. These included the purchase price for the property at the Treasurer's sale, taxes paid for the years 1974 through 1978 on the acreage and coal contained thereon, and attorneys costs and fees incurred in the whole transaction.

The lower court *en banc* initially noted that the taxes paid on "12 acres of Freeport coal" were paid because of an error in the Tax Assessment Office. The court found that the 12 acre parcel was not included in the proceedings under which the Appellants procured their deed, nor was such parcel included in their action to quiet title. Therefore, the court found it had no basis for ordering any restitution of taxes erroneously paid by Appellants on that property in the quiet title proceedings. The Appellants have offered no argument on this appeal specifically contesting that finding by the lower court, and no basis for reversal of that aspect of the lower court's findings is apparent to us. Likewise, the Appellants have not presented any argument to this Court as a basis for recovery of attorneys costs and fees incurred, and we find no ground for ordering the Appellees to reimburse the Appellants for such expenses.

 The Appellants note in their Brief a recognition that "... the general rule of law governing tax sale situations is that there would be no reimbursement of any costs or taxes paid...". Nevertheless, they argue that equity demands that they be reimbursed by the Appellees for taxes paid (other than on the coal parcel discussed above), from 1974 through 1978, and for the purchase price Appellants paid for the property. We must first agree with the Appellants that the general rule is that there is no right of reimbursement, at least from the true property owners, for either the purchase cost or subsequent tax payments by a tax sale purchase after an invalid sale. *Gaul v. McLaughlin,*

207 Pa.Super. 434, 217 A.2d 757 (1966)[6]; See also *United States v. 137.02 Acres of Land*, 334 F.Supp. 1021 (1971). We cannot agree that unjust enrichment or any other equitable principle justifies forcing the true property owner or owners to reimburse tax and other costs paid, with respect to their land, without their proven knowledge, request, or even consent. Thus, we see no basis for ordering such restitution here, against the true property owners.[7]

The order of the lower court is hereby affirmed.

---

**6.** We recognize that the Supreme Court noted in *Shafer v. Hansen*, supra at footnote 4 that the defendants were paying plaintiffs for tax money with interest, expended by the plaintiffs in the purchase of the defendants' property at a Treasurer's sale. However, the Court was not there presented with the issue of a *right* to reimbursement, and was only noting a *stipulation* of the parties as to agreed relief upon a disposition of the property in favor of the defendants.

**7.** We express no opinion as to whether the Appellants may have a cause or causes of action for restitution or damages against any other person or entity, for the losses they have experienced in this transaction.