533 A.2d 487

Re: The Upset Sale of Properties Against Which Delinquent 1981 Taxes Were Returned to the Tax Claim Union on or About the First Monday of May, 1982 (Skibo Property). Tax Claim Unit of North-ampton County, Pennsylvania, Appellant.

Argued September 14, 1987, before Judge CRAIG, and Senior Judges BARBIERI and KALISH, sitting as a panel of three.

*Jill F. Fackenthal,* with her, *Leo V. DeVito, Jr.,* and *John J. Bartos,* for appellant.

*Erv McLain,* with him, *Thomas J. Maloney,* for appellee.

OPINION BY SENIOR JUDGE BARBIERI, November 9, 1987:

This is an appeal by the Tax Claim Unit of Northampton County (TCU) from an order of the Court of Common Pleas of Northampton County dismissing TCU's exceptions and entering judgment in favor of Windrift Real Estate Associates (Windrift) in the amount of $901.25. Windrift's claim against TCU arose out of a tax claim sale held on November 17, 1983, whereat Windrift purchased a property which sale was later voided by the common pleas court on the basis of a defective notice sent to the property owner by TCU. The common pleas court held that Windrift was dam-

aged by TCU's negligence and entitled to recover its costs of borrowing the funds used to purchase the property at the voided sale. We will affirm.

The material facts were stipulated by the parties and are as follows. In 1983, the TCU notified Alyce Skibo that claims for delinquent taxes had become absolute and that the property would be sold to satisfy those delinquent taxes. The TCU held an auction on November 17, 1983, at which auction Windrift was the successful bidder on Skibo's property for $25,200.00. The tax sale was made subject to certain publicized terms.[1] In Janu-

---

[1] The terms that governed the November 17, 1983, tax sale were as follows:

The properties hereinbelow described will be sold at auction to the highest bidder and the purchaser of any property at such sale shall, as soon as the property is struck down, pay to the Tax Claim Unit the entire purchase money. In case said amount is not so paid, the sale shall be void and the property shall be put up again at the same sale. The lowest bid accepted on any piece of property will be the Upset Price, the approximate amount of which is set forth below.

The owner or owners of any owner-occupied real estate may be entitled to an extension of the redemption period for up to twelve (12) additional months under and subject to the provisions of Section 502 and 503 of the Real Estate Tax Sale Law. Owners that qualify should contact the Northampton County Tax Claim Section for further details.

A purchaser at sale takes only what title there is to sell and the doctrine of Caveat Emptor applies. The Tax Claim Unit, its representatives, employees, and solicitors make no representation of warranties to any prospective purchasers as to the state of the title. The buyer or buyers take subject to any real estate taxes, municipal liens, mortgages, Federal tax liens, and other liens which are not divested by this sale.

ALL SALES ARE FINAL AND NO REFUNDS WILL BE MADE AFTER THE CLOSE OF THIS

ary, 1984, Skibo filed objections to the sale based in part on the TCU's failure to adequately inform her of her redemption rights, specifically her right to apply for a one-year extension of the redemption period granted under Northampton County Ordinance No. 72. On October 2, 1984, the common pleas court sustained Skibo's exceptions and set aside the sale of her property at the November 17, 1983, auction. Subsequently, the TCU refunded to Windrift the $25,200.00 purchase price as well as $1,999.62 in interest that the TCU had earned on the purchase price while it was held in escrow. Windrift sought from the TCU reimbursement for its entire interest expense of $2,900.87, as well as counsel fees in the amount of $1,992.50 that it expended in defending its interest in the sale property during Skibo's challenge to the sale. The common pleas court held that the TCU negligently failed to provide Skibo with the proper notice as required by law and that Windrift's additional interest expense incurred in borrowing the funds to purchase Skibo's property at the tax sale was reasonably foreseeable, making the TCU liable to Windrift for the entire amount of its interest expense incurred, $2,900.87, less the interest TCU earned on the escrow funds that were already paid to Windrift, $1,999.62, leaving a liability of $901.25, upon which the common pleas court entered judgment in favor of Windrift against the TCU. The court denied Windrift's claim for attorney's fees.

The sole issue presented in this appeal is whether a tax collection unit of a municipality is liable to a disappointed purchaser for costs the purchaser incurred in

SALE. FINAL PURCHASER MUST MAKE SETTLE-MENT OF THE PENNSYLVANIA ONE PERCENT (1%) REAL ESTATE TAX BEFORE LEAVING THE COURT-HOUSE.

Slip Op. at 2.

bidding on and purchasing property at the unit's tax sale where, through the negligence of the tax collection unit, the sale is voided and the purchaser does not obtain the property it successfully bid upon.[2] The TCU argues that there is no right of reimbursement for costs incurred by a disappointed purchaser at a tax sale if the sale is later held to be invalid. In the alternative, the TCU argues that if there is such a right of reimbursement, it must be limited to the funds earned by the TCU while the purchase price is held in escrow.

There is no serious question that a disappointed purchaser at a tax sale cannot recover its costs incurred in participating in that sale from the *property owner* if the sale is later held to be invalid. *Fidei v. Underwood,* 291 Pa. Superior Ct. 375, 435 A.2d 1275 (1981); *Gaul v. McLaughlin,* 207 Pa. Superior Ct. 434, 217 A.2d 757 (1966). In *Fidei,* however, the Superior Court held that a disappointed purchaser of property has no right of reimbursement against the true owners where those owners were not notified of the tax sale and the costs were incurred by the purchaser without the owners' knowledge, request or consent. 291 Pa. Superior Ct. at 380-81, 435 A.2d at 1277-78. There, the owners were the heirs of the former record owner of the property and

---

[2] We note in passing that the TCU, as a local agency, would be immune from liability under Section 8541 of the Judicial Code, 42 Pa. C. S. §8541, and that the acts of the TCU asserted by Windrift as serving as the basis for liability do not fall within any of the eight enumerated exceptions to governmental immunity set forth in Section 8542(b) of the Judicial Code, 42 Pa. C. S. §8542(b). As governmental immunity is an affirmative defense that must be raised in a responsive pleading or it is considered waived, the TCU's failure to assert the immunity defense before the common pleas court constituted a waiver. *Heifetz v. Philadelphia State Hospital,* 482 Pa. 386, 393 A.2d 1160 (1978); *Department of Transportation v. Pace,* 64 Pa. Commonwealth Ct. 273, 439 A.2d 1320 (1982); Pa. R.C.P. No. 1030.

the county assessor had never recorded the heirs as the owners of the property in question, still listing the decedent, who died in 1947, as the owner, as late as 1956. The facts in *Gaul* are similar; there the record owner had died intestate in 1934 with a list of heirs being filed with the Letters of Administration that same year. The assessment office also listed the property as belonging to a "James McLaughlin," wherein it was in fact owned by "John J. McLaughlin." The McLaughlin heirs received no notice of the 1950 tax sale at which time the property was sold. The sale was voided in 1961 when the heirs challenged the purchaser's quiet title action. The common pleas court ordered the heirs to reimburse the purchaser for all taxes paid since the sale as well as all monies expended by the purchaser at the tax sale. The Superior Court reversed holding that the purchaser, not being legally obligated to expend any monies on the property, had the status of a volunteer. As such, the Superior Court held that it is well established law that volunteers have no right to reimbursement. *See also Lohr's Estate*, 132 Pa. Superior Ct. 125, 129, 200 A. 135, 136 (1938).

In the case at bar, however, a different set of circumstances is present. Here, the disappointed purchaser is seeking reimbursement for costs expended not from the true owner of the property, but from the municipal agency whose negligence caused the tax sale to be voided. In order for the TCU's negligence to impose liability upon it for damages the voided sale caused Windrift, the TCU must owe some kind of duty to Windrift. If the TCU owed Windrift no duty, then its negligence in failing to properly notify the property owner of her redemption rights does not impose any liability upon it for Windrift's damages no matter how foreseeable those damages may have been. *See e.g., Morena v. South Hills Health System*, 501 Pa. 634, 462 A.2d 680

(1983); *Dorn v. Leibowitz,* 387 Pa. 335, 127 A.2d 734 (1957).

We begin our analysis of whether a municipal tax claim unit owes a duty to prospective bidders at its tax sales by noting that our Supreme Court has held that the presumption that acts of public officials are regular is fully applicable to tax sales. *Hughes v. Chaplin,* 389 Pa. 93, 132 A.2d 200 (1957). Thus, in the absence of evidence to the contrary, courts presume that taxing authorities comply with the applicable statutory requirements prior to placing a property for sale to satisfy delinquent taxes. *Pennsylvania Bank & Trust Co., Youngsville Branch v. Dickey,* 232 Pa. Superior Ct. 224, 335 A.2d 483 (1975). By inviting prospective buyers to bid at its tax auction, the TCU is representing or warranting to those prospective buyers that the statutory requirements for conducting such a sale have been met and that the successful bidder will be buying a parcel of real estate, not a lawsuit. The condition of sale that informs purchasers that they take only what title there is to sell pertains only to the state of the title held by the delinquent taxpayer, it in no way refers to or excuses any defects in the sale procedure caused by the TCU's negligence. That provision only alerts prospective buyers that the subject property may be encumbered by mortgages, judgment liens, municipal liens, and the like. In view of the foregoing, we are satisfied, as was the common pleas court, that a tax claim unit or bureau, such as the TCU, owes a duty to prospective tax sale bidders and purchasers to comply with the statutory requirements of exposing a property to sale for delinquent taxes and, where that duty is breached through negligence, the TCU can be held liable to the disappointed purchaser for damages that were reasonably foreseeable and proximately caused by the TCU's negligence in holding the sale.

We now turn to the TCU's alternative argument that any damages to which a disappointed purchaser is entitled following the voiding of a tax sale are limited to the amount the TCU actually earned on the purchase price while it was held in escrow. The TCU points to no authority for so limiting damages and we can see no policy reason to so limit the recovery where damages have been sufficiently proven. Generally, damages are to be compensatory to the full extent of the injuries sustained and are limited only by the amount of the loss suffered. *Incollingo v. Ewing,* 444 Pa. 263, 282 A.2d 206 (1971); *Holmes Electric Protective Co. of Philadelphia v. Goldstein,* 147 Pa. Superior Ct. 506, 24 A.2d 161 (1942). Here, Windrift proved that it was required to expend $2,900.87 to borrow the funds required by the TCU to purchase the Skibo property at its tax sale. The TCU returned to Windrift only $1,999.65, along with the purchase price, leaving Windrift with remaining out-of-pocket costs of $901.25. The measure of damages where a party has been harmed by a breach of a duty owed by another party is to place the injured party in, or as nearly as possible, in the same position that the party would have been in had the breach of duty not occurred. *Harman v. Chambers,* 358 Pa. 516, 57 A.2d 842 (1948); *Emerman v. Baldwin,* 186 Pa. Superior Ct. 561, 142 A.2d 440 (1958). Therefore, in order to be made whole, Windrift is entitled to be reimbursed the additional $901.25 in interest that it was obliged to incur to complete its attempted purchase of the Skibo property at the November 17, 1983, tax sale. Reimbursement of that sum would place Windrift as nearly as possible in the same position it occupied prior to that sale and its subsequent voiding by the common pleas court.

Having disposed of the TCU's contentions in favor of Windrift, we shall affirm the common pleas court's order entering judgment in favor of Windrift and against the TCU in the amount of $901.25.

## ORDER

NOW, November 9, 1987, the Order of the Court of Common Pleas of Northampton County at Docket No. 1983-CM-6737, dated July 22, 1985, denying the exceptions of the Tax Claim Unit of Northampton County, Pennsylvania, and directing the Prothonotary of Northampton County to enter a final judgment in accordance with that Court's Order of May 13, 1985, is hereby affirmed.