IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Marc Lexie, Executor of the Estate of  :
Diana M. Lincavage, Deceased,         :
                        Appellant     :
                                      :
            v.                        : No. 288 C.D. 2024
                                      : Submitted: November 6, 2025
Washington County Tax Claim Bureau    :
and Van Voorhis Development, Inc.      :


BEFORE:    HONORABLE CHRISTINE FIZZANO CANNON, Judge
           HONORABLE STACY WALLACE, Judge
           HONORABLE MARY HANNAH LEAVITT, Senior Judge


OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE WALLACE                          FILED:  December 9, 2025


        Marc Lexie, Executor of the Estate of Diana M. Lincavage, Deceased (Lexie),
appeals the orders of the Court of Common Pleas of Washington County (trial court)
dated February 9, 2024, and February 29, 2024.  In this case, the trial court set aside
an upset tax sale of property (Property) that once belonged to Diana M. Lincavage.
Nonetheless, in its orders of February 9, 2024, and February 29, 2024, the trial court
awarded $106,619.47 to the tax sale purchaser, Van Voorhis Development, Inc. (Van
Voorhis),[1] including an award of $105,000 for the value of improvements it made to

---

[1] "Van Voorhis" also appears in the record and the parties' briefs as "VanVoorhis."  We use "Van
Voorhis" in this decision because that is the spelling that appears on Van Voorhis's own invoices.

the Property.  Lexie now challenges the trial court's calculation of the award.  After careful review, we affirm.

## BACKGROUND

Lexie filed a "Petition to Object to Confirmation Nisi of 9/26/2022 Upset Sale for Delinquent Taxes Estate Tax Law and to Set Aside and Void Tax Sale" (Petition) on June 22, 2023.[2]  Lexie averred he is executor of the estate of Diana M. Lincavage, deceased, who was an owner of the Property.[3]  Lexie averred the Washington County Tax Bureau (Bureau) sold the Property at an upset tax sale on September 26, 2022, for unpaid taxes in the amount of $5,675.06.  Van Voorhis was the successful bidder at the tax sale and purchased the Property for $10,000.  Lexie contended the Bureau failed to provide proper notice of the sale under the Real Estate Tax Sale Law (Law).[4]  By order dated June 22, 2023, the trial court directed the Bureau to show cause why the tax sale should not be set aside.

Van Voorhis filed a Petition to Intervene on June 22, 2023, and the trial court granted intervention that same day.  On July 21, 2023, Van Voorhis filed an Answer with New Matter opposing Lexie's Petition.  Van Voorhis argued in both its Petition to Intervene and New Matter that it made improvements to the Property and, if Lexie succeeded in setting aside the tax sale, was entitled to receive reimbursement for the improvements.  On July 27, 2023, Lexie filed a Reply to Van Voorhis's New Matter, and the Bureau filed an Answer to Lexie's Petition.

---

[2] We note several of the filings in this matter, such as the Petition, included notices of presentation indicating the parties would present them to the trial court on a date other than the filing date.

[3] The Property had two record owners, Diana M. Lincavage and William J. Lincavage, who is also deceased.

[4] Act of July 7, 1947, P.L. 1368, *as amended*, 72 P.S. §§ 5860.101-5860.803.

The trial court held a hearing on the issue of notice on October 31, 2023. By order dated November 3, 2023, the trial court concluded the Bureau failed to provide proper notice under the Law, granted Lexie's Petition, and set aside the tax sale. The trial court allowed Van Voorhis to retain possession of the Property pending further order of court, directed it to "maintain the [P]roperty in clean order," and scheduled an additional hearing on the issue of "damages." Reproduced Record (R.R.) at 137a. On January 3, 2024, Van Voorhis filed a "Motion to Reopen the Record on the Issues of Actual/Inquiry Notice, Motion to Reconsider with Respect to Laches, and Petition for Improvements and/or Other Equitable Relief." Pertinently, if the trial court chose not to revisit its decision to set aside the tax sale, Van Voorhis sought reimbursement for improvements made to the Property. Lexie filed a Reply on January 9, 2024.

The trial court held the additional hearing on January 10, 2024, and February 6, 2024. In relevant part, the trial court heard testimony from Van Voorhis's owner, Matthew Melvin (Melvin). Melvin testified he also owned a contracting business, Matt Melvin Maintenance (MMM). R.R. at 396a-98a. Melvin testified he obtained the deed to the Property in February 2023 and entered the Property for the first time later that month or in March 2023. *Id.* at 400a-02a, 406a. Melvin testified the home on the Property was in disrepair when he arrived:

> Outside the grass was mowed, but it was getting more and more overgrown. It wasn't properly maintained. Someone cut the grass, but didn't trim the trees back, didn't do anything else besides ride the tractor. No other maintenance outside. Gutter and soffit fascia ripped off the back of the house. The lid was slid off [the] cistern. That was the outside view. . . .
>
> . . . .
>
> It looked like someone maybe left five years ago and went to the grocery store and never came back. There is clutter all over the house. It had no maintenance. The roof was leaking. The windows were

3

blown out.  The furnace was on but not making any heat, so the pipes in the house froze.  So I would say pretty well in disrepair and not livable.

*Id.* at 406a-08a.

Melvin and MMM began making repairs to the Property in April or May 2023. R.R. at 411a-13a.  Melvin first removed an above-ground pool from the Property for insurance reasons.  *Id.* at 412a.  Melvin summarized some of his other repairs to the Property, as follows:

> [We e]ntered the house.  We cleaned out the majority of it.  At that point, I coordinated the work, and then as it went, I can't remember what months, sometime in the summer we got a roof put on it, patched the ceiling.  We did electrical work, plumbing work because the house froze and the lines were busted.  Went down in the cistern and removed dead animals, which got that done.  Dumped bleach in the cistern, cleaned the cistern out.  Fixed the foot valve on the cistern so the house then had water.  I troubleshot the furnace because it wasn't working.  I had a furnace repair guy come up and charge the furnace. . . .

*Id.* at 413a-14a.  Melvin described repairs to the gutters and fascia, the windows, the air conditioning unit, the foundation, and the floor.  *Id.* at 417a-25a.  Further, Melvin described adding parking to the Property using asphalt millings.  *Id.* at 424a.  Melvin offered invoices from MMM to Van Voorhis totaling $308,664.77 for improvements and for maintaining the Property during the court proceedings, among other things. *Id.* at 414a-26a, 444a-57a.

Importantly, Melvin testified he hired Tri State Welding and Contracting (Tri State) to perform cleaning, painting, tree removal, and regrading at the Property, for which he paid $89,700.  R.R. at 426a-429a, 433a-34a, 438a-39a.  Regarding the need for regrading, Melvin explained he found a potential tenant for the Property, and Tri State leveled a "pad" so the tenant could have a greenhouse.  *Id.* at 433a-34a, 438a-39a.  Van Voorhis presented the testimony of Mark Smith (Smith), the owner of Tri

4

State. *Id.* at 460a. Smith described Tri State's work at the Property and confirmed Melvin paid him $89,700. *Id.* at 463a-70a.

Lexie presented testimony from a certified real estate appraiser, John Matthew Barone (Barone), who opined the Property had a fair market value of $115,000 as of August 11, 2023.[5] R.R. 511a, 526a. Although Barone testified the Property was in "marketable condition," he explained additional improvements would be necessary to meet market expectations. *Id.* at 519a, 522a-25a. Barone explained "it is rare that a property sells in distressed conditions, as this one is."[6] *Id.* at 519a.

In its order of February 9, 2024, the trial court directed that the Property "shall now be re-deeded in the names of the persons immediately preceding Van Voorhis." R.R. at 205a. The trial court also directed Lexie to pay Van Voorhis $126,619.47.[7]

---

[5] According to Melvin's invoices, most if not all improvements to the Property summarized above were completed by August 1, 2023. *See* R.R. at 819a-20a. We note the original record this Court received does not include the exhibits admitted at the hearing, but Lexie has included those exhibits in the Reproduced Record, and Van Voorhis does not dispute their accuracy. *See Commonwealth v. Brown*, 52 A.3d 1139, 1145 n.4 (Pa. 2012).

[6] Other witnesses at the hearing on January 10, 2024, and February 6, 2024, included the Finance Operations Manager for the Bureau, Amanda Klem; Lexie; excavator David Arkovich and general contractor Joel Wygant, who testified for Lexie regarding the cost of work Van Voorhis performed; and Van Voorhis's real estate agent, David MacFann.

[7] The order included the following conditions:

> [Lexie] shall pay [Van Voorhis] $126,619.47 within 30 days. If same cannot be accomplished, then [Lexie] shall make a good faith effort to secure a mortgage. If a mortgage cannot be secured, [Lexie] shall pay $1,500 per month, each month, by the 5th day of the month, to [Van Voorhis]. If [Lexie] is unable to pay the $126,619.47 within 30 days of this date, he shall immediately commence paying $1,500.00 to [Van Voorhis] as he attempts to secure a mortgage. To secure [Van Voorhis's] interest, a constructive trust shall be imposed upon the subject [P]roperty until the $126,619.47 is satisfied.

R.R. at 205a-06a.

5

*Id.* The trial court denied Van Voorhis's requests to reopen the record and reconsider its decision. *Id.* at 206a-08a. Addressing the value of improvements, the trial court observed Melvin owns both Van Voorhis and MMM. *Id.* at 208a-09a. As a result, the trial court expressed skepticism regarding the costs of the improvements Melvin alleged during the hearing:

> The [trial c]ourt heard a substantial amount of testimony from [Lexie] as well as witnesses [Van Voorhis] called. The [trial c]ourt concludes that [] Melvin improved the [P]roperty, which he started in April/May 2023. [] Melvin was credible when testifying that the home was not in habitable condition when he purchased it, such as needing a new roof, needing new windows, needing repairs to the cistern (cleaning as well), needing repairs to the air conditioning unit, and needing repairs to the furnace. Further, the [trial c]ourt does not doubt that [] Smith did a fair amount of grading/leveling to the [P]roperty to accommodate a greenhouse for [] Melvin's first tenant. However, the [trial c]ourt did not find [] Melvin's testimony to be credible in important respects.
>
> [] Melvin claimed to have completed $308,664.77 worth of improvements and maintenance to the [P]roperty. Much of the work he billed was for his own work or services at a rate of $1,000.00 per hour (a rate apparently imposed due to anger at the [c]ourt proceedings), even though he initially charged himself $80 or $125 per hour depending upon the type of work completed. Additionally, many charges on MMM invoices have nothing to do with an actual improvement to the home regarding habitability, such as storage costs for a former tenant's greenhouse at $3,000 per month, the time to pay and file property taxes, "checking on [the] house," cutting grass, attending council meetings, time spent for court, and meeting with contractors. Also, [] Melvin did not produce any receipts to substantiate the work he performed and materials purchased, which amounted to $218,944.77 of the requested $308,644.77.

R.R. at 209a (citations to the record and footnotes omitted).

Addressing Tri State's bill for $89,700, the trial court observed Smith did not explain how much of Tri State's work involved tasks related to cleaning the Property

and painting. R.R. at 209a-10a. The trial court deemed this "an important distinction since removing trees and leveling/grading work does not concern the improvement of property to make it habitable." *Id.* at 210a. The trial court believed improvements that did not make the Property habitable or "more habitable" were not reimbursable. *Id.*

Accordingly, the trial court explained it would value the improvements to the Property by "determining the current fair market value of the [P]roperty based upon [] Melvin's work." R.R. at 210a. The trial court accepted Barone's opinion that the Property had a fair market value of $115,000. *Id.* at 211a. Using this figure, the trial court concluded Lexie must reimburse Van Voorhis $115,000, plus $10,000 for the purchase price at the tax sale, and $1,619.47 in taxes, for a total of $126,619.47. *Id.* at 211a.

Lexie filed a Motion for Reconsideration on February 20, 2024. Van Voorhis filed a Motion for Post-Trial Relief on February 22, 2024, and a Response to Lexie's Motion for Reconsideration on February 23, 2024. In its order of February 29, 2024, the trial court partially granted the Motion for Reconsideration and Motion for Post-trial Relief. In relevant part, the trial court reduced the amount Lexie would owe to Van Voorhis to $106,619.47, explaining it should have subtracted, rather than added, the $10,000 for the tax sale purchase price from the amount due. R.R. at 241a. The trial court also directed the Bureau to provide Van Voorhis with a $10,000 refund.[8] *Id.*

---

[8] The order included the following conditions:

> [1)] In addition to a constructive trust to secure [Van Voorhis's] interest, [Lexie] shall purchase property insurance to secure its value. [Lexie] shall provide proof by March 21, 2024, that insurance has been purchased, and depending upon the

**(Footnote continued on next page…)**

7

Lexie timely appealed to this Court.[9]  On appeal, Lexie contends the trial court erred by using the Property's current fair market value to determine the value of the improvements Van Voorhis made to the Property.  Lexie's Br. at 12.  According to Lexie, the trial court's decision suggests the Property had no value at the time of the tax sale, which cannot be true.  *Id.* at 12-15.  Moreover, Lexie argues the trial court's decision results in a "forced sale" of the Property for its fair market value, which has the effect of punishing an innocent estate and permitting a "designing" purchaser to

---

payment plan [Lexie] selects, provid[e] [Van Voorhis] proof each quarter, semi-annually, or annually.

[2)] [Lexie] shall pay the property taxes to ensure that the [P]roperty does not become subject to a tax sale.  [Lexie] shall provide proof of payment to the taxing authorities on an annual basis.

[3)] Failure of [Lexie] to pay the $1,500.00 timely, failure to provide annual proof of property tax payments, or failure to provide proof of insurance on a quarterly, semi-annual, or annual basis (depending upon the payment schedule [Lexie] selected) shall subject [Lexie] to contempt proceedings.

R.R. at 240a-41a.

[9] Van Voorhis asserts Lexie should have filed a post-trial motion.  Van Voorhis's Br. at 4 n.2.  In Lexie's Petition to Accept Appeal of Final Order filed in this Court on June 14, 2024, he described his Motion for Reconsideration as a post-trial motion and explained Van Voorhis praeciped for the entry of judgment after he filed this appeal.  Thus, Lexie asked that we accept his appeal as a timely appeal from a final order.  The Court granted the Petition to Accept Appeal of Final Order on July 24, 2024.  Notably, this Court addressed the necessity of filing a post-trial motion in a case with a similar procedural background to this one and explained a post-trial motion was not required.  *See Rice v. Compro Distrib.*, 901 A.2d 570, 573 n.4 (Pa. Cmwlth. 2006).  Assuming a post-trial motion was required, Van Voorhis acknowledges that a "timely motion styled as one for reconsideration where post-trial motions are proper can be treated as a post-trial motion where the request for relief comports with the requirements delineated in Rule 227.1(a)(4) [of the Pennsylvania Rules of Civil Procedure, Pa.R.Civ.P. 227.1(a)(4)]—to affirm, modify or change a decision[.]"  Van Voorhis's Br. at 4 n.2 (quoting *Oak Tree Condo. Ass'n v. Greene*, 133 A.3d 113, 117 (Pa. Cmwlth. 2016)).  Here, Lexie filed his Motion for Reconsideration within 10 days of the filing date of the trial court's February 9, 2024 order, which did not occur until February 12, 2024.  *See* Pa.R.Civ.P. 227.1(c)(2).

profit from the Bureau's failure to provide notice. *Id.* at 10-11, 14. Lexie contends Van Voorhis failed to present sufficient evidence of the value of the improvements, and the only evidence "of legitimate potential improvement" was Lexie's appraisal. *Id.* at 13-14.

## DISCUSSION

We review the trial court's orders for an abuse of discretion or error of law. *Rukuson v. Dantzler*, 812 A.2d 776, 778 n.2 (Pa. Cmwlth. 2002). As this Court has recognized, "[a]n abuse of discretion is not merely an error of judgment; it occurs only 'if in reaching a conclusion the law is overridden or misapplied, or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias or ill-will, as shown by the evidence or the record.'" *Prozan v. Millcreek Twp. Sch. Dist.*, 338 A.3d 220, 225 n.9 (Pa. Cmwlth. 2025) (quoting *In re Farnese*, 17 A.3d 357, 367 (Pa. 2011)).

The trial court based its decision directing Lexie to reimburse Van Voorhis on Section 20 of the Act of April 12, 1842, P.L. 262 (Act), which provides:

No law respecting the sale of land for taxes shall be so construed by any court as to prevent a recovery of the value of the improvements made, in all cases whatsoever where a recovery is effected against a purchaser at a sale for taxes, or other person claiming under him; but the acts of assembly shall be so construed that a recovery for improvements as aforesaid shall be an incident in all cases whatsoever, where there is a recovery against the tax title, without regard to the nature of the defects of said title, and wherever any person claiming under such tax title may be out of possession, and on account of defects in said title fail to recover the land, the jury under the direction of the court trying the cause shall assess the value of the improvements made by such person, or those under whom he claims, and shall fix the time within which said assessment shall be paid by the defendant or defendants; and if the sum so assessed be not paid within the time specified by the said jury, the title of the plaintiff shall thenceforth be confirmed and rendered good and valid to the land in dispute, as against the defendant, and all claiming under him; and after a failure to pay

9

such assessment, a writ of habere facias possessionem may issue forthwith from said court, without any other proceeding, and in all cases where a recovery is had against the defendant or defendants, claiming under a tax title as aforesaid, the jury assessing the value of the improvements shall under the direction of the court also find the time within which the same shall be paid by the plaintiff, and on failure to pay such assessment within the time so fixed by the said jury, the title of the said defendant or defendants shall thenceforth be confirmed and rendered good and valid as against plaintiff and all claiming title under him: Provided, That no improvements made within two years after the sale of said land for taxes shall be paid for by the party recovering or purchasing the same: Provided also, That if the defects in the tax title shall be known to the purchaser at the time of the sale, or if a tender of the redemption money be made within two years of sale, he shall not be allowed for his improvement: And provided further, That nothing herein contained shall affect the interests of minors who shall claim the lands inherited by them within two years after they shall arrive at age.

72 P.S. § 5875 (footnote omitted).

This Court interpreted the Act in *Rukuson*. That matter involved a judicial tax sale of property that Rukuson owned in Dauphin County. *Rukuson*, 812 A.2d at 777. Dantzler purchased the property at the tax sale, which "was vacant and in a blighted condition." *Id.* More specifically, "[t]here was no electricity or water service to the building, and there was no kitchen or any working bathrooms. The roof leaked, and the walls had lost plaster as a result." *Id.* Dantzler set out to rehabilitate the property, by "install[ing] electric service panels, electrical wiring, fixtures, insulation, drywall and siding." *Id.* The lower court overturned the tax sale based on the lack of notice to Rukuson. *Id.* at 777-78. However, the lower court found Dantzler was not aware of the defect in her title and awarded her $13,471.85 for the cost of the improvements she made to the property. *Id.*

On appeal, Rukuson first argued Dantzler was not entitled to recover the cost of her improvements to the property because of language in the Act providing "[t]hat no improvements made within two years after the sale of said land for taxes shall be

10

paid for by the party recovering or purchasing the same." *See* 72 P.S. § 5875. This Court found no merit to Rukuson's argument, explaining the two-year period in the Act referred to the right of redemption under a statute that had since been repealed.[10] *Rukuson*, 812 A.2d at 779. Thus, we explained "the concern shown in [the Act] for rights of redemption during a two-year period after a sale no longer appl[ies]" and, "where Dantzler did not know or have reason to know of the defects in the title that she secured at the tax sale, she is entitled to recover for improvements that she made to the property." *Id.* at 779.

In his second and third arguments, Rukuson contended the lower court should not have calculated the value of improvements Dantzler made to the property based on their cost. *Rukuson*, 812 A.2d at 779-80. This Court explained:

> In the present case the [lower] court made findings in the text of its opinion in support of its order to the effect that this property was vacant and in a blighted condition, with no electrical or water service, a leaking roof, walls gutted of plaster and no kitchen or working bathrooms. The property obviously had not been occupied for years, and it was not habitable in that state. Although it is conceivable, as Rukuson argues, that a purchaser might spend a lot of money without substantially enhancing the value of a property, in this case the [lower] court found that the money that Dantzler spent turned a dilapidated structure into a functioning home. Contrary to Rukuson's position, the record here fully supports the finding that Dantzler made valuable improvements to the property. The federal court cited by Rukuson, after specifying that the value of improvements measured the right of

---

[10] This Court explained:

> Section 15 of the Act of May 29, 1931, P.L. 280, *as amended,* 72 P.S. § 5971o, relating to redemption money, provided that an owner or lien creditor of a property sold for taxes could redeem it by payment within two years of specified items constituting "redemption money." However, this section was repealed insofar as it applies to taxing districts coming within the provisions of or operating under the . . . Law by Section 801 of that Law, 72 P.S. § 5860.801.

*Rukuson*, 812 A.2d at 779.

11

recovery, also stated: "The cost of improvements has been held to be some evidence of their value." [*U.S. v. 137.02 Acres of Land, More or Less, in Centre Cnty., Commonwealth of Pa.*, 334 F. Supp. 1021, 1025 (M.D. Pa. 1971).] The Court finds no error in the calculation of the value of the improvements. . . .

*Rukuson*, 812 A.2d at 780.

Applying *Rukuson* to the matter now before the Court, Van Voorhis is entitled to recover the value of improvements it made to the Property. The trial court credited Melvin's testimony that the Property was in a state of disrepair at the time of the tax sale, and that Melvin and MMM spent time and money to rehabilitate the Property.[11] Melvin produced invoices purporting to detail the costs of these improvements, but the trial court found he lacked credibility in this regard. Accordingly, the trial court determined the value of the improvements using the Property's fair market value.

Contrary to Lexie's contentions, the trial court did not conclude the Property had no value at the time of the tax sale. Rather, the trial court's February 29, 2024 order reflects that the Property was worth $10,000, i.e., "the value paid at the open market tax sale proceeding." R.R. at 241a. The trial court credited Barone's opinion that the Property's fair market value was $115,000 as of August 11, 2023. The trial court then subtracted the $10,000 purchase price, resulting in a total increase in value of $105,000.

Although it may appear doubtful at first glance that the purchase price at a tax sale could represent the fair market value of the Property before Van Voorhis began making improvements, it is undisputed the Property sold for more than its minimum bid price of $5,675.06, R.R. 33a-34a, which reflects competitive bidding during the sale. Further, Barone opined the Property was in a "distressed" condition *even after*

---

[11] Lexie characterizes Van Voorhis as "designing," Lexie's Br. at 10, but he does not allege Melvin had notice of the defect to his tax title so as to defeat his request for recovery. In addition, we note Lexie does not challenge the trial court's award of $1,619.47 in taxes.

*Van Voorhis made improvements*, and any sale of such a property would be "rare." *Id.* at 519a. Given that the Property was in a far more "distressed" condition before the improvements, we can discern no error of law or abuse of discretion by the trial court in using the tax sale purchase price as a measure of fair market value.[12]

## CONCLUSION

For the foregoing reasons, we conclude Lexie is not entitled to relief, and we affirm the trial court's orders dated February 9, 2024, and February 29, 2024, which awarded Van Voorhis $105,000 for the value of improvements made to the Property, as part of a total award of $106,619.47.

_____
STACY WALLACE, Judge

---

[12] We do not agree with the trial court's apparent reasoning that improvements to property are only reimbursable if they make the property habitable or "more habitable." *See* R.R. at 209a-10a. Our decision in *Rukuson* does not state or suggest that restriction. It is possible for a tax sale purchaser to a make a valuable improvement to property, such as adding a detached garage, for example, that has no impact on habitability. Similarly, we cannot accept the trial court's apparent reasoning that cleaning tasks like "removing garbage and old furniture" are improvements to property within the meaning of the Act. *See id.* at 210a; *Noll by Noll v. Harrisburg Area YMCA*, 643 A.2d 81, 87 (Pa. 1994) (explaining, "[a]n improvement includes everything that permanently enhances the value of real property" and offering examples). However, the trial court's reasoning in this regard involved only its assessment of Tri State's invoice, and we see no basis to disturb the trial court's conclusion that the invoice was too "undetailed" to be used in determining the value of the improvements Van Voorhis made to the Property. R.R. at 210a.

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Marc Lexie, Executor of the Estate of :
Diana M. Lincavage, Deceased, :
                       Appellant :
                              :
          v. : No. 288 C.D. 2024
                              :
Washington County Tax Claim Bureau :
and Van Voorhis Development, Inc. :

# **O R D E R**

**AND NOW**, this 9th day of December 2025, the orders of the Court of Common Pleas of Washington County, dated February 9, 2024 and February 29, 2024, are **AFFIRMED**.

_____
STACY WALLACE, Judge